UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENIUS GROUP LIMITED,<br><br>    Petitioner,<br><br>    v.<br><br>LZG INTERNATIONAL, INC., MICHAEL THOMAS MOE and PETER RITZ,<br><br>    Respondents.<br><br>VSTOCK TRANSFER, LLC,<br><br>    Nominal Respondent. | CIVIL ACTION NO. 1:24-cv-08464 |

## LZG INTERNATIONAL, INC'S SHAREHOLDERS' MOTION TO INTERVENE

Petitioner Genius Group Limited ("GNS") colluded with Respondents Michael Moe and Peter Ritz to defraud LZG International, Inc. ("LZGI") and its shareholders of tens of millions of dollars, through a fraudulent merger that proceeded based on false information submitted to the SEC, and was conceived to enrich Ritz and Moe while allowing GNS to artificially inflate its stock price and raise millions of dollars in funding it desperately needed to stay afloat.

The fraudulent actions underlying the GNS-LZGI merger are the subject of a class action pending before this Court, filed on October 4, 2024, by several LZGI shareholders that have been defrauded by GNS, including Shawn Carey and Brickell Capital Solo 401k Trust ("Shareholders"). *See Shawn Carey et al v. Michael Moe et al*, Case No. 24-cv-07551, pending in the United States District Court for the Southern District of New York.

Because the Shareholders must protect their own rights, and because they have an interest in the transaction that is the subject of this action that cannot be adequately protected by none of

the existing parties, the Shareholders respectfully request that this Court exercise its wide discretion and allow them to intervene in this case.

## BACKGROUND

In January 2024, GNS and LZGI announced a merger. The deal raised grave concerns among LZGI shareholders for several reasons.

First, the merger had never received the necessary approval of LZGI shareholders. Instead, the deal was concealed from all shareholders of LZGI.

Second, the deal made zero business sense. In contrast to GNS, which has never been profitable, reported roughly $70 million in losses since its creation in 2019, and was on the verge of collapsing, LZGI owned a thriving asset that generated over $70 million in annual revenue.

As structured, however, the merger would result in the sale of LZGI's key revenue generating asset to GNS, in exchange for restricted GNS stock of doubtful value, because GNS was struggling financially and could collapse at any moment.[1]

Third, following the merger, GNS required Ritz and Moe to wind down LZGI, effectively shutting down the company after stripping it of its key asset.

In short, the deal would tremendously benefit GNS, Ritz and Moe, while destroying LZGI, resulting in millions of dollars in losses to its Shareholders.

Because the terms of the merger were one-sided and extremely unfavorable to LZGI, the shareholders of LZGI began to investigate the deal. The investigation uncovered the following:

---

[1] A few months before it announced a merger with LZGI, GNS reported, in its Form 20-F/A, that "due to recent changes in [GNS'] 2022 convertible loan terms in which company elected to pay all future payments in cash, negative cash flows, and continued net losses, management has determined that without additional capital raised, in the next twelve months, there is substantial doubt about [GNS'] ability to continue as a going concern." https://www.sec.gov/Archives/edgar/data/1847806/000149315223026701/form20-fa.htm.

a. **Moe and Ritz**, as directors and officers of LZGI, (a) wasted or even stole tens of millions of dollars of LZGI funds, (b) concealed their diversion of funds and theft of corporate assets by, among other things, providing false information to auditors (auditors that resigned upon discovering the falsity of the information), and (c) engaged in merger negotiations with GNS to cover up their wrongdoing, get rid of all liabilities they had created, and, at the same time, enrich themselves;

b. **GNS** acted knowingly and in conjunction with Moe and Ritz to defraud the Shareholders through several material omissions and misrepresentations filed with the SEC, in an effort (a) to secure a source of revenues that it was incapable of generating, (b) artificially bolster the price of its securities, by depicting a false picture of its finances, and (c) raise up to $250 million by relying on the revenues generated by LZGI's asset.

The investigation also revealed that, around the same time GNS announced the merger, Ritz and Moe wrongfully issued 73,306,716 LZGI shares (including 16 million shares to themselves and 19 million shares meant to effectuate a bribe on a GNS board member), without shareholder approval, public disclosure, or any compensation to LZGI.

Ritz and Moe's issuance of millions of LZGI shares was not only wrongful, but also impacted the exchange ratio they set for the merger (1 GNS stock for every 3.08 LZGI shares), resulting in LZGI shareholders receiving 54% less GNS stock than they would have received, absent the fraudulent issuance of shares.

Yet, despite the fraudulent issuance of millions of LZGI shares, the lack of shareholder approval for the merger, the millions of dollars in funds that Ritz and Moe had diverted, the fraudulent exchange ratio set for the merger, and the complete destruction of LZGI stemming from

the deal, GNS effectuated the merger and falsely represented, in its SEC filings and press releases, that "[a]ll necessary approvals for the transaction from shareholders, the board and regulators were received prior to the closing."[2]

Even worse, in connection with the merger GNS rewarded Moe and Ritz, as follows: (a) it elevated Ritz to the position of GNS' Chief Revenue Officer, (b) it appointed both Ritz and Moe as Directors and members of GNS' Board, and (c) in or around April 2024, it gifted 12,427,876 GNS shares to Ritz (6.68% of GNS' outstanding stock), and 5,524,945 GNS shares to Moe (2.97% of GNS' outstanding stock), making Ritz and Moe one of GNS's largest individual shareholders.

GNS only provided these benefits to Ritz and Moe. To be sure, at that point, no LZGI shareholder had received their GNS stock, as all GNS shares issued to effectuate the merger were restricted from trading until September 16, 2024.[3]

The Shareholders formally reported to GNS's CEO that the GNS-LZGI merger appeared to be in violation of federal securities laws. GNS, however, did not take any action necessary to rectify the wrongdoing, and refused to even investigate it.

Based on the mounting evidence of misconduct, the Shareholders filed two lawsuits: (i) a securities class action with this Court against GNS, Moe, Ritz, and Roger Hamilton (GNS's CEO),

---

[2] https://ir.geniusgroup.net/news-events/press-releases/detail/124/genius-group-release-additional-details-of-fatbrain-ai.

[3] As Peter Ritz stated, in a letter addressed to LZGI shareholders and filed with the SEC: " [LZGI] and Genius Group completed their previously announced agreement to join forces . . . The combined company is listed on the NYSE American and is trading under the ticker symbol 'GNS.' . . . [LZGI] received . . . 73,873,784 shares of Genius Group common stock (such shares of common stock, the "Consideration Shares"). The Consideration Shares will be split by the stockholders of [LZGI] based upon an exchange ratio that entitles each [LZGI] stockholder to receive one (1) share of common stock in Genius Group for every three and eight one hundredth (3.08) shares such stockholder holds of [LZGI] common stock. The Consideration Shares will be distributed . . . as soon as practicable . . . [T]his could take up to six months from the closing of the merger and the Consideration Shares are restricted from trading until such time . . ." https://www.sec.gov/Archives/edgar/data/1126115/000165495424005454/lzgi_ex991.htm

seeking to protect their rights as Shareholders of LZGI (*Carey et al v. Moe et al*, Case No. 24-cv-07551); (ii) a derivative suit seeking to protect LZGI from complete destruction resulting from GNS's actions to defraud the company (*Shawn Carey et al v. Michael Moe et al*, Case No. 2024-019773-CA-01, pending in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida). True and correct copies of the class action Complaint and the derivative suit Complaint are attached hereto as **Composite Exhibit A**.

Rather than presenting its defenses in the correct fora, GNS attempted to distance itself from the fraudulent GNS-LZGI merger, by initiating an arbitration against LZGI and filing this action before this Court. Both proceedings, however, are based on the false narrative of GNS as a victim that was somehow wronged in connection with the deal.

As part of that narrative, GNS's CEO swore, under oath, that if the GNS stock were released to LZGI shareholders—under the terms that GNS bargained for—, the company would face catastrophic consequences, and perhaps even cease to exist. DE 5 at ¶ 35 (GNS' CEO stating that the company faced severe "loss of market capitalization," "loss of financing opportunities," and would be at risk of "being delisted from the NYSE . . .").

In reality, these proceedings allowed GNS to further collude with Respondents Ritz and Moe, causing even more harm to LZGI and its Shareholders.

On November 20, 2024, days after representing to this Court that the GNS- LZGI merger resulted from a fraudulent scheme of catastrophic consequences to the company, GNS submitted a Form 6-K to the SEC, in which it heavily relied on the revenues extracted from the merger. Specifically, GNS announced that its "pro forma revenue" for the first half of 2024 reached "$20.7

million," "representing a 130% increase[,]" and that its "net loss" over the same period has decreased by "37%".[4]

What is worse, GNS also represented that its "[f]inancial results include the [LZGI] transaction following the signing of a settlement commitment where all parties have committed to reach an amicable settlement that includes proceeding with the LZGI transaction . . ."[5]

GNS's reliance on the revenues extracted from the GNS-LZGI deal to bolster its financial performance is contrary to GNS's stance, in these proceedings, which depicted the deal as extremely harmful to the company, putting at risk the very existence of GNS.

Consistent with their prior fraudulent actions, the existing parties to this case failed to disclose the terms of any "amicable settlement" to the Shareholders of LZGI, nor did any LZGI shareholder approve a settlement, despite the Shareholders being the rightful owners of the GNS stock issued as consideration for the deal.

## **ARGUMENT**

A motion to intervene "involves matters that lie within the Court's discretion." *Financeware, Inc. v. UBS Fin. Services*, 2011 WL 6092311, at *2 (S.D.N.Y. Dec. 7, 2011). Likewise, this Court retains "broad discretion in determining whether to add or drop parties." *BBK Tobacco & Foods, LLP v. 7th St. Village Farm Inc.*, 2017 WL 8723938, at *1 (S.D.N.Y. June 15, 2017). Here, the Court should exercise its broad discretion to allow the Shareholders to intervene, either as a matter of right or permissively, or add the Shareholders as parties to this action, because GNS's Petition directly impairs the exercise of the Shareholders' right to the GNS stock which

---

[4] https://www.sec.gov/Archives/edgar/data/1847806/000149315224046933/ex99-1.htm.
[5] *Id*.

should have been released almost two months ago, resulting in multimillion-dollar losses that continue to increase each day.

### A. The Shareholders Are Entitled to Intervene As a Matter of Right

Under Fed. R. Civ. P. 24(a), "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

"In order to intervene under Rule 24(a)(2) an applicant must (1) file timely, (2) demonstrate an interest in the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise adequately protected." *Sec. & Exch. Comm'n v. El-Khouri*, 2021 WL 601652, at *2 (S.D.N.Y. Jan. 26, 2021).

The Shareholders satisfy each of these conditions.

*First*, the Shareholders timely filed this motion less than two weeks after GNS initiated this action, which remains at its early stages. To be sure, GNS's motion for an injunction is not even fully briefed, no discovery has been conducted by any of the parties, and no hearing on GNS's motion has occurred.

Thus, no party will be prejudiced by the Shareholders' intervention because it will not result in any delay to this case. In fact, regardless of whether this motion is granted or denied, the exact same factual and legal issues will be litigated by the parties making it impossible for any party to claim that it would be prejudiced in any way if the Shareholders were allowed to intervene.

*Second*, it is undisputed that the Shareholders have a right to the transaction subject to this action. As GNS conceded, in its Petition, and GNS's CEO swore, in his declaration, the Shareholders have a right to the GNS stock involved in this litigation, and any claims regarding

those rights cannot be properly adjudicated without their involvement. *See* DE 5 at ¶¶ 8 and 28 (GNS's CEO asserting, under oath, that "[a]s consideration for the [merger] . . . LZG[I] received 73,873,748 [GNS] shares" and "[LZGI] shareholders . . . demanded that VStock transfer the 73,873,748 shares . . . to the shareholders of LZG[I] because the six month restriction on the shares expired on September 16, 2024.").

In addition, given the scope of the injunctive relief GNS is seeking, the Shareholders have "an interest and right to intervene in this action, given that [they] would be—and [are]—bound by the terms of the injunction[]" which halts, indefinitely, the release of their GNS shares. *Allstar Mktg. Group, LLC v. AFACAI*, 2021 WL 75138, at *3 (S.D.N.Y. Jan. 8, 2021) (granting motion to intervene as of right, where movant was affected by injunctive relief, which impaired its business). Thus, the Shareholders' "interests here are cognizable enough to support a motion to intervene, and that those interests may be impaired depending on the disposition of this case." *Id.*

*Third*, a determination on GNS's motion for preliminary injunction will impact the Shareholders' right to the GNS stock, because, if granted, the relief could postpone, for years, the release of GNS shares that belong to the Shareholders, further aggravating the losses that the Shareholders have incurred thus far. Indeed, since the GNS-LZGI merger was completed, in March 2024, the value of GNS stock plummeted roughly 75% (and decreased 85.53% year to date), causing LZGI shareholders to suffer millions of dollars in losses, in addition to the losses resulting from the 1:3.08 exchange ratio that GNS, Ritz and Moe fraudulently set for the merger.

*Fourth*, the Shareholders cannot expect that any of the existing parties to this matter, which have colluded to defraud them, would adequately protect their interests or the interests of LZGI. The assistance of the Shareholders may be very helpful, here, not only because of their familiarity with the transaction at issue in this case, but, more importantly, because the existing parties to this

case have conspired (and appear to continue to conspire) to defraud LZGI and the Shareholders, creating an atmosphere of collusion that could not result in any favorable outcome for the Shareholders.

### B. The Shareholders Are Entitled to Permissively Intervene

Even if the Shareholders had not proven that they hold a legally protectible interest in the transaction at issue in this action, permissive intervention would still be appropriate under Fed. R. Civ. P. 24(b)(1)(B).

That rule provides that "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." And while "intervention as a matter of right" requires certain conditions to be met, "[p]ermissive intervention does not require such a showing, and 'is discretionary with the trial court. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Oneida Group Inc. v. Steelite Int'l U.S.A. Inc.*, 2017 WL 6459464, at *11 (E.D.N.Y. Dec. 15, 2017) (quoting *Citizens Against Casino Gambling in Erie Cty. v. Hogen*, 417 Fed.Appx. 49, 50 (2d Cir. 2011)).

Here, the claims advanced by GNS and by the Shareholders share several common questions of law and fact, including, for instance, (i) the fraudulent actions that led to the GNS-LZGI merger, (ii) who is entitled to the GNS stock, and (iii) whether the stock should be immediately released to all LZGI shareholders (their rightful owners).

In addition, the Shareholders will assist in the just and equitable adjudication of the issues upon which GNS based its Petition, because of (a) their undisputed interest in the GNS-LZGI transaction at issue in this litigation, (b) their undisputed property rights in the GNS stock, and (c) their knowledge of the facts underlying the arbitration filed by GNS against Ritz and Moe.

Finally, as detailed above, "intervention will not unduly delay the case or prejudice [GNS], given the short period of time that the action has been pending." *Berger v. Lerum Toy Co., Inc.*, 1992 WL 309537, at *2 (S.D.N.Y. Oct. 13, 1992).

WHEREFORE, the Shareholders respectfully request that this Court allow them to intervene, or to be added as parties, in these proceedings.

Dated: November 25, 2024

> Respectfully Submitted,
>
> **AXS LAW GROUP, PLLC**
> 2121 NW 2nd Avenue, Suite 201
> Miami, FL 33127
> Tel:  305.297.1878
>
> By: */s/ Jeffrey W. Gutchess*
> Jeffrey W. Gutchess
> jeff@axslawgroup.com
> Bernardo N. M. Franco
> bernardo@axslawgroup.com
> eservice@axslawgroup.com
>
> *Counsel for the LZGI Shareholders*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 25, 2024, a true and correct copy of the foregoing was served on all counsel of record via CM/ECF.

> By: */s/ Jeffrey W. Gutchess*
> Jeffrey W. Gutchess