USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/11/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENIUS GROUP LIMITED,

          *Petitioner*,

-against-

LZG INTERNATIONAL, INC.,
MICHAEL THOMAS MOE, and PETER RITZ,

          *Respondents*.

VSTOCK TRANSFER, LLC,

          *Nominal Respondent*.

LZG INTERNATIONAL, INC.'s
SHAREHOLDERS,

          *Intervenor*.

1:24-cv-8464-MKV

**OPINION AND ORDER
GRANTING MOTION FOR
PRELIMINARY INJUNCTION**

MARY KAY VYSKOCIL, United States District Judge:

    Petitioner Genius Group Limited ("Petitioner" or "Genius") commenced this special proceeding on November 7, 2024, against Respondent LZG International, Inc. ("LZG"), Respondent Moe, and Respondent Ritz, (collectively, "Respondents") and VStock Transfer, LLC ("VStock") seeking a preliminary injunction in aid of arbitration pursuant to Section 7502(c) of the N.Y. Civil Practice Law and Rules. [ECF No. 1]. In support of its petition Genius submitted a declaration of Roger Hamilton, CEO of Genius, and a memorandum of law in support. ("Petitioner Br.," [ECF No. 6], "Hamilton Decl." [ECF No. 6]). Petitioner and Respondents filed a proposed stipulation and order consenting to the entry of preliminary injunction, [ECF No. 32], which the Court subsequently so-Ordered. (the "Consent Preliminary Injunction," [ECF No. 34]). Thereafter, Intervenor Shareholders of LZG International, Inc., ("Intervenor") filed a memorandum of law requesting that the Court reconsider the Consent Preliminary Injunction.

("Intervenor Opp.," [ECF No. 41]). Petitioner opposed, [ECF No. 43], and Intervenor replied. [ECF No. 47]. Finally, Respondents filed a letter indicating that they take no position on Intervenor's motion for reconsideration. [ECF No. 56].

Having carefully considered the parties' submissions and the relevant authorities, Intervenor's motion for reconsideration is treated as an opposition to the application for a preliminary injunction, and the Court makes the following findings of fact and conclusions of law pursuant to Rules 52(a) and 65 of the Federal Rules of Civil Procedure in connection with the application for a preliminary injunction. In light of those findings and conclusions, the application of Genius for a preliminary injunction is GRANTED.

## **PROCEDURAL HISTORY**

On November 7, 2024, Petitioner commenced this special proceeding against Respondents and VStock seeking a preliminary injunction in aid of arbitration pursuant to Section 7502(c) of the N.Y. Civil Practice Law and Rules. [ECF No. 1]. Petitioner moved for Preliminary Injunctive Relief and Temporary Restraining Order prohibiting, among other things not in dispute, "Respondents, Respondents' agents, employees, attorneys, and affiliates, and VStock Transfer, LLC from selling, transferring, assigning, encumbering, or otherwise disposing of Respondents' shares of common stock or stock certificates in Genius or taking any action that would enable Respondents to sell, transfer, assign, encumber, or otherwise dispose of its Genius shares of common stock, pending the hearing and determination of the Arbitration between Genius and Respondents commenced by Genius before the ICC (International Chamber of Commerce) on October 30, 2024." [ECF No. 3, Proposed Order at 2]. On November 12, 2024, Judge Failla, to whom the case was initially assigned, held a telephonic hearing and subsequently issued an Order to Show Cause for Preliminary Injunction and a Temporary Restraining Order stating that

"Respondents are temporarily restrained and enjoined from taking any steps or other process that result in any attempt to sell, transfer, assign, encumber, or otherwise dispose of Genius' shares of common stock." [ECF Nos. 14, 16]. The TRO was extended until December 3, 2024 and then again until December 10, 2024. [ECF Nos. 20, 22].

Judge Failla held another hearing on December 10, 2024 and at that hearing LZG International's shareholders were granted intervention and the TRO was once again extended until December 18, 2024. [ECF No. 39]. Six days later, on December 16, 2024, this case was reassigned to this Court as related to an earlier filed action brought by Intervenor against Petitioner and Respondents captioned *Carey et al v. Moe et al*, Case No. 1:24-CV-07551(MKV). That same day, Petitioner and Respondents submitted a stipulation consenting to entry of the proposed order for a preliminary injunction. [ECF No. 31]. No opposition having been filed by Intervenor and the TRO being about to expire, on December 17, 2024, this Court so-Ordered the Consent Preliminary Injunction. [ECF No. 34]. Later that day, Intervenor filed a motion for reconsideration of the Consent Preliminary Injunction asserting that they had not yet had the "chance to submit their opposition to the Preliminary Injunction Petition." Intervenor. Opp. at 2.

This Court held a conference on January 6, 2025 and discussed with all parties, among other things, Intervenor's motion to reconsider. Intervenor conceded that its motion for reconsideration is really an opposition to the Preliminary Injunction petition because it does not address any of the standards required for a motion for reconsideration. The Court granted Intervenor's motion for reconsideration and stated that it would treat the motion for reconsideration as an opposition to the petition. [ECF No. 50]. The Court set a schedule for Respondents to submit briefing on the issue since, although they stipulated to the relief, they had not yet spoken on Intervenor's position and they indicated that they wished to do so. [ECF No. 50]. The Court

3

entertained one brief extension request from Respondents to file their anticipated briefing, [ECF No. 52], but ultimately Respondents retained new counsel and informed the Court that Respondents now take no position on the Intervenor's motion for reconsideration/opposition to entry of a preliminary injunction. [ECF No. 56].

## **FINDINGS OF FACT**

In 2023, LZG sought out Genius to negotiate a potential asset purchase proposal and Respondent Ritz, CEO and director of LZG, met with Roger Hamilton, CEO and director of Genius, to discuss the proposal. Hamilton Decl. ¶ 3–4. On January 24, 2024, Genius entered into the Asset Purchase Agreement (the "Agreement," ECF No. 6–1) with LZG. Hamilton Decl. ¶ 4. Pursuant to the Agreement, Genius acquired certain assets and liabilities of LZG, through the purchase of 100% of the stock of FB Primesource Acquisition, LLC ("FBPA"), a subsidiary of LZG. Hamilton Decl. ¶ 4. Included in the terms of the Agreement, Respondents represented and warranted that the assets being sold by LZG to Genius were "freely transferable, alienable and licensable by LZG without restriction." Hamilton Decl. ¶ 7; *see also* the Agreement at § 8.7(a), [ECF No. 6–1] ("all Owner IP is freely and fully transferable, alienable, and licensable by LZG without restriction and payment of any kind to any third party"). As consideration for the purchase of LZG's assets and liabilities (1) Respondents Ritz and Moe were appointed as Chief Revenue Officer and Board Chairman of Genius respectively and (2) LZG received 73,873,784 shares of Genius common stock, of which Respondents Ritz and Moe received 12,427,876 and 5,524,945 shares, respectively. Hamilton Decl. ¶ 8.

After entering the Agreement, Genius learned that on January 10, 2024, a series of documents had been executed by Yevgeniy Chsherbinin and Victor Nazarov, two non-party individuals unrelated to the Agreement, and Respondent Ritz on behalf of FBPA in relation to an

4

earlier executed May 17, 2022 agreement, through which LZG had purchased Prime Source Group ("PSG") for a purchase price of approximately $18 million. Hamilton Decl. ¶ 9; ECF Nos. 6–2, 6–3, 6–4, 6–5. These documents gave Chsherbinin and Nazarov the right to reclaim 100% of PSG upon non-fulfillment of the outstanding debt payments that LZG owed to them for the purchase of PSG. Hamilton Decl. ¶ 10. Further, these documents state that upon reclamation of PSG, any amounts previously paid would not be reimbursed to the purchaser (*i.e.* LZG). Hamilton Decl. ¶ 11.

Under the Agreement, Genius agreed to assume up to $15 million in LZG liabilities held by FBPA, which it believed to include the full amount outstanding to Chsherbinin and Nazarov for the purchase of PSG. Hamilton Decl. ¶ 12. Genius made payments in the aggregate amount of $6,595,180 between March and August 2024 towards the purchase of PSG, Hamilton Decl. ¶ 13, and Hamilton asked Respondents Moe and Ritz to negotiate for an extension of the final payments to Chsherbinin and Nazarov. *Id*. However, the negotiations were unsuccessful because Chsherbinin and Nazarov wanted to start charging monthly penalties and pointed to the fact that they could exercise their right to reclaim 100% of PSG unless payments, including any penalties, were paid. Hamilton Decl. ¶ 14. Ultimately, the purchase price for PSG increased from $18 million to over $25 million and Chsherbinin and Nazarov refused to allow Genius to integrate the assets of PSG with Genius' business until the outstanding debt was paid in full. Hamilton Decl. ¶ 15.

Prior to entering the Agreement, Respondents failed to provide Genius notice of the documents that had been executed on January 10, 2024 that amended the agreement LZG had with Chsherbinin and Nazarov, including the fact that they now had the right to reclaim 100% of the assets Genius was purchasing from LZG. Hamilton Decl. ¶ 16.

On September 26, 2024, counsel sent a letter on behalf of the shareholders of LZG to VStock, the transfer agent, demanding that VStock transfer the 73,873,748 shares (7,387,374 shares after the reverse stock split in August 2024) of Genius common stock, which are currently held under the ownership of LZG pursuant to the Agreement, to the shareholders because the restriction period had expired on September 16, 2024.  Hamilton Decl. ¶ 28, ECF No. 1–8.

When VStock did not transfer the Genius shares, the shareholders of LZG commenced the action captioned *Carey et al v. Moe et al*, Case No. 1:24-CV-07551(MKV).  Subsequently, Petitioner submitted an application to commence an arbitration with the ICC pursuant to a mandatory arbitration clause in the Agreement and then initiated this action seeking to enjoin any transfer of shares pending the final resolution of arbitration.  ECF No. 1.

## **LEGAL STANDARDS**

The Second Circuit has held that "[w]here the parties have agreed to arbitrate a dispute, a district court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration" and "[t]he standard for such an injunction is the same as for preliminary injunctions generally."  *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894–95 (2d Cir. 2015) (internal citations omitted).

A plaintiff seeking a preliminary injunction must show: (1) "a likelihood of success on the merits"; (2) "that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) "that the public interest would not be disserved by the issuance of [the] injunction."  *See, e.g.*, *Res. Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107, 114 (2d Cir. 2024) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010).  The requirements for a preliminary injunction pursuant to Section 7502(c) of the N.Y. Civil Practice Law and Rules track the "traditional equitable standards for preliminary injunctive relief."

*SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79, 80 (2d Cir. 2000).

As discussed below, the Court concludes that Genius is entitled to a preliminary injunction against Respondents to prevent the transfer of Genius stock currently held by VStock, the transfer agent, pending the resolution of the arbitration in the ICC.

## CONCLUSIONS OF LAW

### I. Petitioner Has Established Irreparable Harm

The irreparable harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). Therefore, this requirement must be satisfied before the other requirements for an injunction can be considered. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). "It is well established that an irreparable injury is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011); *see also Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (irreparable harm is likely "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.").

Petitioner argues that if Respondents are not enjoined and are instead permitted to freely transfer the Genius shares through VStock to LZG and its shareholders, Genius would suffer loss of market capitalization, loss of reputation and goodwill, and be subject to a hostile takeover by the LZG shareholders. Petitioner Br. at 13–14. Intervenor argues that even if Petitioner suffered these alleged harms they could be rectified with a monetary award and damages since any such damages would be reflected in the market and as such would be ascertainable. Intervenor Opp. at 5. Furthermore, Intervenor argues that the alleged harms of loss of reputation, goodwill, and

business are speculative and conclusory. Intervenor Opp. at 6–7.

The Court agrees with Intervenor that Petitioner's arguments of harm based on the dilution of the stock price, the loss of market capitalization, and the loss of the Genius business are insufficient to find irreparable harm because they are "speculative and conclusory" and, if suffered would be quantifiable and could be compensated with monetary damages. *Borey v. National Union Fire Ins. Co. of Pittsburgh. Pa.*, 934 F.2d 30, 34 (2d Cir. 1991) (The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction."). While it is true that courts in this Circuit have found money damages inadequate to compensate parties for harms such as total collapse of a business, delisting from the NYSE, and difficulties raising necessary capital, *see, e.g.*, *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York*, 749 F.2d 124, 126 (2d Cir. 1984); *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007); *Norlin Corp. v. Rooney, Pace, Inc.*, No. 84 Civ. 0298 (DNE), 1984 WL 892, at *2 (S.D.N.Y. Apr. 16, 1984), *aff'd*, 744 F.2d 255 (2d Cir. 1984), those harms are merely speculative here. For example, Petitioner points only to Hamilton's declaration that states "***I believe*** that the LZG shareholders will immediately sell the shares" and when the "LZG shareholders sell the Genius shares in the open market, Genius' common stock price would drastically decrease, exposing Genius to a variety of risks, including shareholder dilution, loss of market capitalization, and risk of being delisted from the NYSE American Stock Exchange." Hamilton Decl. ¶¶ 32–33 (emphasis added). Mr. Hamilton's predictions about the potential sale by LZG shareholders of Genius shares and the potential outcomes from that possible action are insufficient to support finding irreparable harm because they are not immediate or concrete. *See USA Network v. Jones Intercable, Inc.*, 704 F.Supp. 488, 491 (S.D.N.Y. 1989) (holding that a preliminary injunction should not issue upon a party's "imaginative, worst case scenario of the

consequences flowing from the [opposing party's] alleged wrong"); *see also Helios & Matheson North America, Inc. v. Vegasoft Oy*, No. 07 Civ. 3600, 2007 WL 1541204, at * 4 (S.D.N.Y. May 24, 2007) (denying the plaintiff's motion for a preliminary injunction where there was no evidence, except for speculative testimony to support irreparable harm).

Similarly, Mr. Hamilton's conclusory statement that Genius will face "loss of reputation and goodwill," Hamilton Decl. ¶ 35, is also insufficient to support a finding of irreparable harm. *See National Football League Players Ass'n v. National Football League Properties, Inc.,* No. 90 Civ. 4244, 1991 WL 79325, at *4 (S.D.N.Y. 1991) (plaintiff's conclusory statements of loss of reputation were insufficient); *Shepard Industries, Inc. v. 135 East 57th Street, LLC.*, No. 97 Civ. 8447, 1999 WL 728641, at *7 (S.D.N.Y. 1999) (conclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm).

However, the Court does find that there is a risk of concrete and imminent irreparable harm here because Petitioner has commenced a contractually obligated arbitration to resolve allegations that Respondents are not entitled to the Genius shares in the first place because Petitioner entered into the Agreement granting a right to such shares to LZG in reliance on false representations and warranties.  The primary purpose of the preliminary injunction sought by Petitioner is to maintain the *status quo*, including the Genius shares continuing to be held by VStock, until the parties can resolve these issues at arbitration.  *See* Agreement § 18.1 ("Any dispute arising out of or in connection with this contract . . . shall be referred to and finally resolved by arbitration").   If this Court were not to issue a preliminary injunction, the harm Genius seeks to address in the pending arbitration will occur before the arbitrator could render a final decision, and Genius will lose the opportunity to seek redress.  *See Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1067 (2d Cir. 1972) ("in a proper case such as we have here, the only way to preserve the status quo

9

during the pendency of the arbitration proceeding is by the granting of injunctive relief"); *see also Credit Suisse Sec. (USA) LLC v. Ebling*, No. 06 CIV. 11339 (RCC), 2006 WL 3457693, at *3 (S.D.N.Y. Nov. 27, 2006) ("Without a preliminary injunction, the harm that Petitioner seeks to address via arbitration will occur before the arbitrator can render a decision, and Petitioner will lose its right to meaningfully resolve these employment disputes via arbitration. This constitutes irreparable harm.").

Furthermore, there is a risk of imminent and irreparable harm here since restoration of the *status quo* may be impossible, if Petitioner's allegations are validated in the arbitration, if the Agreement is allowed to be fully consummated at this time. As of right now, only a portion of the asset purchase transaction has been completed. Specifically, Genius has assumed the assets and liabilities of LZG and Respondent Ritz and Respondent Moe were appointed to executive positions at Genius, but the 73,873,784 shares of Genius common stock have not yet been transferred to LZG and its shareholders. The Court views this scenario as analogous to situations in which Courts find irreparable harm and halt an allegedly unlawful merger in the context of allegations of false or misleading statements in proxy statements in violation of Rule 14a-9. *See Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 261 (2d Cir. 1989), *amended on other grounds*, 890 F.2d 569 (2d Cir. 1989) (internal citations and quotations omitted) ("Erring on the side of granting the injunction . . . in corporate control contests because once the tender offer has been consummated it becomes difficult, and sometimes virtually impossible, for a court to 'unscramble the eggs.' "); *see also Bank of N.Y. Co v. Ne. Bancorp, Inc.*, 9 F.3d 1065, 1067 (2d Cir. 1993) ("[W]here a merger has been consummated, restoration of the status quo may be impossible."). Similarly, here if the Court does not issue a preliminary injunction, the Genius shares will be transferred, the asset purchase transaction will be fully completed, and Genius will have lost the chance to resolve at

arbitration the harm that it currently faces.

## II. Petitioner Has Established A Likelihood of Success on the Merits

To obtain a preliminary injunction, Petitioner "need not show that there is a likelihood of success on the merits of all of [its] claims for relief. Rather, [Petitioner needs to] show a likelihood of success on the merits of at least one of [its] claims." *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018) (internal quotations and citations omitted); *see also New York Pathological & X-Ray Lab'ys, Inc. v. Immigr. & Naturalization Serv.*, 523 F.2d 79, 82 (2d Cir. 1975). Petitioner has established that it is likely to succeed in the pending arbitration on the merits on at least its claim for breach of representations and warranties.[1]

With respect to its breach of contract claim based on a breach of representations and warranties, Genius alleges that Respondents breached the Agreement by (1) withholding knowledge of a material agreement between Respondents and Chsherbinin and Nazarov which has the potential to substantially affect Genius' rights to the purchased assets and intellectual property; and (2) representing that the assets being sold were freely and fully transferable when in fact they were encumbered by these agreements with Chsherbinin and Nazarov. *See* Petitioner Br. 15–16. Under New York law, the elements of breach of contract are "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*, 156 F. App'x 349, 350–51 (2d Cir. 2005).

---

[1] Because Petitioner need only demonstrate the likelihood of success on one of its claims, the Court does not evaluate the likelihood of success on the merits of Petitioner's other claims, including misrepresentation by material omission and breach of fiduciary duty.

First, the record is unrebutted that the Agreement exists, and that it was executed on January 24, 2024, between Petitioner and Respondents. ECF No. 6–1. The Agreement states, in part, that:

> LZG is the sole and exclusive legal and beneficial owner of all right title and interest in and to the Owner IP, and all Owner IP is freely and fully transferable, alienable, and licensable by LZG ***without restriction and payment*** of any kind to any third party and the approval of any third party

ECF No. 6–1, § 8.7(a) (emphasis added). However, the record also includes four documents executed on January 10, 2024—two weeks before the Agreement was executed—between Respondent Ritz and Chsherbini and Nazarov that allow Chsherbini and Nazarov to reclaim their ownership of PSG, assets Genius acquired through the Agreement, if the debt was not paid in full. *See* ECF No. 6–2, 6–3, 6–4, 6–5. Prior to entering the Agreement, Respondents failed to provide Genius notice of these documents and their content, Hamilton Decl. ¶ 16, including the fact that Chsherbini and Nazarov could potentially reclaim 100% of the assets Genius thought it was acquiring and could do so without returning any of the purchase price previously paid by Genius. *Id*. Intervenor argues without any evidentiary support that Petitioner is not likely to succeed on the merits in the pending arbitration because Mr. Hamilton allegedly assisted Respondents Ritz and Moe in perpetrating the fraudulent scheme. Intervenor Opp. at 7. Intervenor only cites to its own allegations in its complaint in *Carey et al v. Moe*, Case No. 1:24-CV-07551(MKV) to support this assertion.

On the record before it, the Court finds that Petitioner has made a clear showing that it is likely to succeed on the merits of its breach of representations and warranties claim in the pending arbitration.

### III. The Balance of Hardships and Public Interest Weigh in Favor of a Preliminary Injunction

The balance of hardships and public interest also weigh in favor of issuing a preliminary injunction pending the resolution of arbitration. First, as to the balance of hardships, the requested injunction—to which Respondents have previously consented, *see* ECF Nos. 31, 32—seeks only to maintain the status quo until the parties can resolve the issues in arbitration as the Agreement requires. The fact that Respondents have previously agreed to the injunction wholesale underscores that it does not present undue hardship to them. And, for the reasons explained above with respect to irreparable harm, Petitioner is likely to suffer hardship if an injunction is not issued. Intervenor argues that the balance of hardships favors the LZG shareholders claiming that they have already suffered millions of dollars in losses and will suffer more financial harm than Petitioner will suffer if the shares continue to be withheld from them. Intervenor Opp. at 7–8. However, as discussed above, Petitioner faces more than just financial harm here; it faces the loss of its contractually bargained for right to arbitrate these disputes and the potential inability of the Court or Arbitration panel to "unscramble the eggs" if the transaction is fully completed before the arbitration is resolved. *See Consol. Gold Fields PLC*, 871 F.2d at ("Erring on the side of granting the injunction . . . because once the tender offer has been consummated it becomes difficult, and sometimes virtually impossible, for a court to 'unscramble the eggs.' "); *see also Bank of N.Y. Co*, 9 F.3d at 1067 ("[W]here a merger has been consummated, restoration of the status quo may be impossible."). Thus, the balance of hardships weighs in favor of granting a preliminary injunction.

Finally, as to the public interest "[t]here is a well-recognized public interest in enforcing contracts and upholding the rule of law." *Empower Energies, Inc. v. SolarBlue, LLC*, 2016 WL 5338555, at *13 (S.D.N.Y. Sept. 23, 2016); *see also Nimbus Therapeutics, LLC v. Celgene Corp.*, 570 F. Supp. 3d 100, 127 (S.D.N.Y. 2021) (concluding this principal "is particularly true where,

13

as here, the contract involves sophisticated counterparties who engaged in actual negotiation over the provisions at issue"). The Court concludes that the public interest also weighs in favor of issuing a preliminary injunction and preserving the *status quo* while the arbitration is pending.

### IV. A Bond Is Required to Secure the Interests of LZG and LZG Shareholders While the Preliminary Injunction is in Place

Pursuant to Rule 65(c), "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper." Fed. R. Civ. Pro. 65(c). The language of Rule 65(c) confers broad discretion on the trial judge to set the amount of the bond, even to dispense with the bond requirement altogether. *See Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (citation omitted); *Clarkson Co., v. Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976). "[T]he burden is on the party seeking security to establish a rational basis for the amount of the proposed bond." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006), *aff'd*, 246 F. App'x 73 (2d Cir. 2007).

At the November 12, 2024, conference before Judge Failla, the Petitioner and Respondents discussed the topic of bond. *See* "Nov. 12, 2024 Hearing Tr." 14:11–25, 15:1–13, [ECF No. 16]. Respondents suggested that Petitioner should "put up the bond in the amount of money that the market is fluctuating." Nov. 12, 2024 Hearing Tr. 14:15–22. Respondents provided no evidence to the Court on what this amount would be or why that amount would be reasonable. Petitioner stated that "we would ask your Honor to provide what a reasonable amount would be." Nov. 12, 2024 Hearing Tr. 15:3–7. Intervenor has not stated a position on an appropriate bond amount, but it did indicate that the shares at issue are currently worth approximately $5 million. Intervenor

Opp. at 8. Without a more coherent basis for fixing security, the Court fixes the amount at $500,000.

## CONCLUSION

Accordingly, for the reasons set forth above, Genius' motion for a preliminary injunction is GRANTED.

IT IS HEREBY ORDERED THAT pending the resolution of the arbitration in the ICC, Respondents, Respondents' agents, employees, attorneys, and affiliates, and VStock Transfer LLC are enjoined from: (1) selling, transferring, assigning, encumbering or otherwise disposing of Respondents' shares of common stock or stock certifications in Genius or taking any action that would enable Respondents to sell, transfer, assigned encumber, or otherwise dispose of its Genius shares of common stock and (2) participating in Genius shareholder meetings and from participating in Genius shareholder voting.

IT IS FURTHER ORDERED that on or before February 19, 2025 Genius shall post of a bond in the amount of $500,000 to provide security in the event that Respondents have been wrongfully restrained.

The Clerk of Court is respectfully requested to terminate docket entry 41.

**SO ORDERED.**

**Dated: February 11, 2025**
**New York, New York**

_Mary Kay Vyskocil_
**HON. MARY KAY VYSKOCIL**
**United States District Judge**