USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/13/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENIUS GROUP LIMITED,

        *Petitioner*,

-against-

LZG INTERNATIONAL, INC.,
MICHAEL THOMAS MOE and PETER RITZ,

        *Respondents*.

VSTOCK TRANSFER, LLC,
        *Nominal Respondent*.

1:24-cv-8464-MKV

**OPINION AND ORDER VACATING PRIOR CONSENT PRELIMINARY INJUNCTION, GRANTING MOTION FOR PRELIMINARY INJUNCTION, AND STAYING CASE PENDING ARBITRATION**

MARY KAY VYSKOCIL, United States District Judge:

    Genius Group Limited ("Genius") commenced this special proceeding on November 7, 2024, against LZG International, Inc., Michael Moe, and Peter Ritz, (collectively, "LZG") and Vstock Transfer, LLC ("Vstock") and sought a preliminary injunction to maintain the *status quo* in aid of arbitration. [ECF No. 1]. Specifically, Genius sought an Order enjoining LZG and its agents, employees, attorneys, and affiliates, and Vstock from selling, transferring, assigning, encumbering or otherwise disposing of LZG's shares of Genius and enjoining LZG from participating in Genius shareholder meetings and voting. [ECF No. 3]. On consent of Genius and LZG, the Court issued a preliminary injunction on February 14, 2025. [ECF No. 57]. Thereafter, LZG also moved for entry of a preliminary injunction to maintain the *status quo* in aid of arbitration. [ECF No. 58]. Specifically, LZG sought an order enjoining Genius from issuing additional shares of its stock, purchasing Bitcoin with funds from investors, funds raised from rights offerings, and funds raised from the purchase of additional shares, and from any manipulation of its shares. [ECF No. 58]. On February 28, 2025, after extensive briefing and

1

submissions of documentary evidence the Court held a hearing on the motion for a preliminary injunction sought by LZG.

Having carefully considered the parties' submissions, the arguments and evidence presented at the hearing, and the relevant authorities, the Court makes the following findings of fact and conclusions of law pursuant to Rules 52(a) and 65 of the Federal Rules of Civil Procedure in connection with the application for a preliminary injunction. In light of those findings and conclusions, the prior opinion and order granting the consent preliminary injunction in this action, [ECF No. 57], is VACATED, and the parties' separate motions for a preliminary injunction to maintain the *status quo* in aid of arbitration, [ECF Nos. 1, 58], are GRANTED.

## **PROCEDURAL HISTORY**

This case has a somewhat convoluted procedural history. On November 7, 2024, Genius commenced this special proceeding against LZG and Vstock seeking a preliminary injunction in aid of arbitration. [ECF No. 1]. Genius sought an order prohibiting (1) LZG and its agents, employees, attorneys, and affiliates, and Vstock from selling, transferring, assigning, encumbering or otherwise disposing of LZG's shares of Genius and (2) LZG from participating in Genius shareholder meetings and Genius shareholder voting pending the final resolution of the Arbitration between Genius and LZG commenced by Genius before the International Chamber of Commerce ("ICC"). [ECF No. 3]. In support of its petition Genius submitted a declaration of Roger Hamilton, CEO of Genius, ("First Hamilton Decl.," [ECF No. 6]) and a memorandum of law in support. ("Genius Mem.," [ECF No. 6]).

On November 12, 2024, Judge Failla, to whom the case was initially assigned, held a telephonic hearing, [ECF No. 16], and subsequently issued a Temporary Restraining Order (the "TRO") and an Order to Show Cause for Preliminary Injunction. [ECF No. 14]. The TRO

temporarily restrained and enjoined LZG "from taking any steps or other process that result in any attempt to sell, transfer, assign, encumber, or otherwise dispose of Genius' shares of common stock." [ECF Nos. 14]. Judge Failla subsequently extended the TRO until December 3, 2024, and then again until December 10, 2024. [ECF Nos. 20, 22].

Judge Failla held another hearing on December 10, 2024, and at that hearing LZG International's shareholders were granted leave to intervene in the case and the TRO was once again extended until December 18, 2024. [ECF No. 39].

Six days later, on December 16, 2024, the case was reassigned to this Court as related to an earlier filed action brought by the shareholders of LZG ("Intervenor") against Genius and LZG captioned *Carey v. Moe*, Case No. 1:24-CV-07551(MKV).[1]  That same day, Genius and LZG submitted a stipulation consenting to entry of a proposed order for a preliminary injunction. [ECF No. 31].  No opposition having been filed by Intervenor and the TRO being about to expire, on December 17, 2024, this Court subsequently so-Ordered the proposed consent preliminary injunction submitted by LZG and Genius. (the "Consent Preliminary Injunction," [ECF No. 34]).

Later that day, Intervenor filed a motion for reconsideration of the Consent Preliminary Injunction, [ECF No. 41], asserting that they had not yet had the "chance to submit their opposition to the Preliminary Injunction Petition." *Id.* at 2.  Genius opposed reconsideration, [ECF No. 43], and Intervenor replied.  [ECF No. 47].  LZG filed a letter indicating that it took no position on Intervenor's motion for reconsideration. [ECF No. 56].

This Court held a conference on January 6, 2025 and discussed with all parties, among other things, Intervenor's motion to reconsider.  Intervenor conceded that its motion for reconsideration is, in reality, a belated opposition to the Preliminary Injunction Petition since it

---

[1] The earlier filed shareholder action to which this case was related was voluntarily dismissed on February 25, 2025.  *See Carey et al v. Moe et al*, Case No. 1:24-CV-07551(MKV), ECF No. 43.

3

does not address any of the criteria required for a motion for reconsideration. The Court granted Intervenor's motion for reconsideration and stated that it would treat the motion for reconsideration as an opposition to the petition and motion for a preliminary injunction. [ECF No. 50]. The Court set a schedule for LZG to submit briefing on the issue since, although they stipulated to the preliminary injunctive relief, they had not yet spoken on Intervenor's position and they indicated that they wished to do so. [ECF No. 50]. The Court entertained one brief extension request from LZG to file its anticipated briefing, [ECF No. 52], but ultimately LZG retained new counsel and informed the Court that LZG took no position on the Intervenor's motion for reconsideration/opposition to entry of a preliminary injunction. [ECF No. 56].

Thereafter the Court issued a preliminary injunction, *on consent of LZG*, enjoining, pending the resolution of the arbitration, "[LZG], [LZG]'s agents, employees, attorneys, and affiliates, and Vstock Transfer LLC" from "(1) selling, transferring, assigning, encumbering or otherwise disposing of [LZG]'s shares of common stock or stock certifications in Genius or taking any action that would enable [LZG] to sell, transfer, assigned encumber, or otherwise dispose of its Genius shares of common stock and (2) participating in Genius shareholder meetings and from participating in Genius shareholder voting." [ECF No. 57].

Three days later LZG filed a Proposed Order to Show Cause with Emergency Relief, [ECF No. 58], seeking an order enjoining Genius from (1) "issuing additional shares of its stock (NYSE:GNS)," (2) "purchasing Bitcoin with funds from investors, funds raised from rights offerings, and funds raised from the purchase of additional shares," (3) "further manipulation of its shares," and "other relief against [Genius] as this Court deems just and proper." [ECF No. 58]. In support of its motion LZG submitted a memorandum of law, ("LZG Mem.," [ECF No. 59]), a declaration of Peter Ritz ("First Ritz Decl.," [ECF No. 60]), and an exhibit list. [ECF No. 61].

Genius opposed the motion. ("Genius Opp.," [ECF No. 75]) and in support attached a declaration of Hamilton ("Second Hamilton Decl.," ECF No. 75–1) and exhibits. LZG replied, ("LZG Reply," ECF No. 76]) and in support filed a Declaration of Ritz ("Second Ritz Decl.," [ECF No. 77]).

The Court issued a Temporary Restraining Order to maintain the *status quo* until the Court could pass upon the merits of LZG's motion for a preliminary injunction. [ECF No. 62]. The Court set a briefing schedule and scheduled a hearing. [ECF No. 62]. LZG filed proof of service of its motion, supporting materials, and the Temporary Restraining Order in accordance with the Court's Order. [ECF No. 63]. Thereafter, the parties filed numerous letters, accompanied by declarations and exhibits, regarding the motion outside of the briefing the Court allowed. *See* ECF Nos. 68–71. Specifically, Genius filed a letter arguing that the Temporary Restraining Order should be extinguished immediately, prior to the briefing being fully submitted and before the hearing, because Genius argued that it was not properly served according to the Court's Order. [ECF No. 68]. LZG replied. [ECF No. 69]. Genius filed yet another letter advancing substantially the same arguments. [ECF No. 71]. The Court issued an Order concluding that Genius was sufficiently served in accordance with the Court's Order and denying Genius' request to extinguish the Temporary Restraining Order prior to receiving the completed briefing and conducting a hearing. [ECF No. 72]. The Court also admonished the parties for filing numerous letters without leave of the Court. [ECF No. 72]. Thereafter, as noted above, Genius submitted its opposition to the preliminary injunction and LZG replied.

On February 28, 2025, the Court held a hearing on LZG's motion for a preliminary injunction. ("PI. Hearing Tr.," [ECF No. 93]). At the outset of the hearing, Intervenor Counsel advised the Court that the shareholders of LZG no longer wished to be involved in the case and wished to "terminate their intervention." *See* PI. Hearing Tr. at 3:23–25. The Court directed

counsel for Intervenor to file its request on the docket. [ECF No. 86]. Then the parties presented argument on the motion for a preliminary injunction. At the conclusion of the hearing the parties consented to the extension of the Temporary Restraining Order for an additional fourteen days. [ECF No. 86]. Three days later Genius filled another letter without leave purporting to assert a delayed objection to the extension of the Temporary Restraining Order and again requesting that the Temporary Restraining Order be extinguished. [ECF No. 90]. The Court issued an Order admonishing Genius for once again filing a letter related to the pending motion without leave of the Court and granting LZG leave to file a response. [ECF No. 91]. LZG replied. [ECF No. 92].

Intervenor subsequently filed a motion to withdraw as Intervenors in this action, [ECF No. 95], which the Court granted. [ECF No. 98].

## FINDINGS OF FACT

In June 2022, LZG acquired, through its subsidiary FB Primesource Acquisition LLC ("FBPA"), five Kazakhstani companies, including Prime Source LLP ("PSG"). First Ritz Decl. ¶ 3. Thereafter in late 2023, LZG sought out Genius to negotiate an asset purchase proposal. Frist Hamilton Decl. ¶ 3. The parties engaged in "extensive discussion and negotiation," First Hamilton Decl. ¶ 4, and by November 9, 2023 Genius and LZG had agreed on the key terms of the sale of FBPA to Genius. First Ritz Decl. ¶ 5. Throughout the negotiations of the potential asset purchase proposal, Genius represented to LZG that Genius was a successful education technology company that had 5.4 million students, of whom 179,000 paid $200 per year, and that Genius had a robust revenue acquisition engine. First Ritz Decl. ¶¶ 8–11.

On January 24, 2024, Genius and LZG entered into the Asset Purchase Agreement (the "APA," [ECF No. 6–1]). First Hamilton Decl. ¶ 4; First Ritz Decl. ¶ 5. Genius, pursuant to the APA, acquired certain assets and liabilities of LZG, through the purchase of 100% of the stock of

6

FBPA. First Hamilton Decl. ¶ 4. In exchange for its acquisition of FBPA, Genius agreed to (1) issue 73,873,784 ordinary shares of its stock to LZG, (2) assume $15 million in LZG liabilities (which included $10.3 million due for the purchased of PSG and $4.7 million in other LZG liabilities), and (3) allow one management position and one Board position in Genius to be filled by individuals chosen by LZG. First Ritz Decl. ¶ 6; First Hamilton Decl. ¶¶ 8, 12; PI Hearing Tr. at 17:9–12. The APA included representations and warranties by LZG that the assets being sold by LZG to Genius were "freely transferable, alienable and licensable by LZG without restriction." First Hamilton Decl. ¶ 7; *see also* the APA at § 8.7(a) ("all Owner IP is freely and fully transferable, alienable, and licensable by LZG without restriction and payment of any kind to any third party").

After entering the APA Genius learned about a series of documents that LZG had executed prior to the APA. First Hamilton Decl. ¶ 9; ECF Nos. 6–2, 6–3, 6–4, 6–5. Among other things, those documents gave the original sellers of PSG—two individuals from Kazakhstan (Chsherbinin and Nazarov) unrelated to the Genius-LZG APA—the right to reclaim 100% of PSG upon non-fulfillment of the outstanding debt payments for the LZG purchase of PSG which Genius had just assumed as liabilities through the APA with LZG. First Hamilton Decl. ¶¶ 10, 16. Pursuant to the APA, Genius acquired the assets immediately, but the remaining payments due to the original sellers of PSG were not due until March 31, 2024. First Ritz Decl. ¶ 7. Genius made payments in the aggregate amount of $6,595,180 between March and August 2024 towards the purchase of PSG, First Hamilton Decl. ¶ 13, but ultimately could not make all the payments and negotiated three supplemental agreements that adjusted, and ultimately, increased the amount owed to the original sellers of PSG. First Hamilton Decl. ¶¶ 13–15; First Ritz Decl. ¶¶ 14–18. Similarly, after the APA was executed LZG learned that Genius had generated less than $150,000 each month in

the first half of 2024, which was significantly less than what Genius had represented to LZG during the negotiations of the APA. First Ritz Decl. ¶ 8. Specifically, Genius had represented that it had 179,000 students that paid Genius an average of $200 a year. First Ritz Decl. ¶¶ 8–9, First Ritz Decl. ¶¶ 20–21.

On September 26, 2024, the shareholders of LZG sent a letter to Vstock, the transfer agent, demanding that Vstock transfer the 73,873,748 shares (now 7,387,374 shares after the reverse stock split that occurred in August 2024) of Genius common stock, which are currently held under the ownership of LZG pursuant to the APA, to the shareholders because the restriction period had expired on September 16, 2024. Hamilton Decl. ¶ 28, ECF No. 1–8. When Vstock did not transfer the Genius shares to the shareholders of LZG, they commenced the action captioned *Carey et al v. Moe et al*, Case No. 1:24-CV-07551(MKV).[2]

On October 30, 2024, Genius commenced an arbitration with the ICC against LZG pursuant to the mandatory arbitration clause in the APA and then on November 7, 2024, initiated this action for the sole purpose of obtaining a preliminary injunction to preserve the *status quo* pending the ICC arbitration. Specifically, Genius sought to enjoin (1) any transfer of any Genius shares and (2) the participation of LZG in Genius shareholder meetings and shareholder voting pending the final resolution of arbitration. [ECF Nos. 1, 3]. Shortly thereafter, on November 12, 2024, Genius disclosed to its shareholders that Genius was modifying its business model to include the purchase of Bitcoin where Genius committed to holding 90% of its current and future reserves in Bitcoin. Second Hamilton Decl. ¶ 4; First Ritz Decl. ¶ 24.

## **LEGAL STANDARDS**

The Second Circuit has held that "[w]here the parties have agreed to arbitrate a dispute, a

---

[2] As noted, *see supra* n.1, this action was voluntarily dismissed.

district court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration" and "[t]he standard for such an injunction is the same as for preliminary injunctions generally." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894–95 (2d Cir. 2015) (internal citations omitted).

To succeed on a motion for a preliminary injunction in aid of arbitration, the movant must show: "(1) a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Id.* at 895 (internal quotations omitted).

As discussed below, the Court concludes that both parties are entitled to a preliminary injunction to maintain the *status quo* pending the resolution of the arbitration in the ICC.

## CONCLUSIONS OF LAW

**I.  Both Parties Have Established the Risk of Irreparable
Harm Based on the Potential Loss of the Right to Have
Their Dispute Resolved by Arbitration**

The irreparable harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). Therefore, this requirement must be satisfied before the other requirements for an injunction can be considered. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). "It is well established that an irreparable injury is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011); *see also Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (irreparable harm is likely "where, but for the grant of equitable relief,

there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.").

The Court does find that there is a risk of concrete and imminent irreparable harm faced by both parties here.  Specifically, the loss of the right to have a dispute decided by arbitration when arbitration is the agreed upon means of resolution.  Such a loss is itself an irreparable injury.  *See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990); *see also Thales Avionics, Inc. v. L3 Tech., Inc.*, 719 F. Supp. 3d 337, 347 (S.D.N.Y. 2024).  A preliminary injunction in aid of arbitration "preserve[s] the status quo pending arbitration," and prevents arbitration from "becom[ing] a 'hollow formality' *if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute*." *Blumenthal*, 910 F.2d at 1053 (emphasis added).  The Second Circuit has clearly stated that " [a] district court must ensure that the parties get what they bargained for—a meaningful arbitration of the dispute." *Id.* The " '[s]tatus quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy." *LaRouche v. Kezer*, 20 F.3d 68, 74 n. 7 (2d Cir. 1994) (quoting Black's Law Dictionary 1410 (6th ed. 1990)).

The Court issued the original preliminary injunction in this action sought by Genius and consented to by LZG which enjoined only LZG because the parties represented that this would ensure the *status quo* was maintained while the parties arbitrated their underlying disputes. However, this was clearly incorrect as LZG now seeks its own preliminary injunction seeking to maintain the *status quo* pending the resolution of the arbitration, arguing that Genius has altered the *status quo* by issuing additional shares of its stock and "pivoting into a new strategy,"  PI Hearing Tr. at 17:15–16, all while LZG is enjoined from disposing of their shares in Genius and from participating in shareholder meetings and voting.  Specifically, LZG complains that on

November 12, 2024, after Genius had already initiated this action to obtain a preliminary injunction to maintain the *status quo* pending arbitration, Genius disclosed to its shareholders that it was modifying its business model to include the purchase of Bitcoin and committed to holding 90% of its current and future reserves in Bitcoin.  Second Hamilton Decl. ¶ 4.

Without a preliminary injunction *maintaining the status quo* the harms that each party seeks to redress through arbitration will occur before a final decision is rendered and thus "the only way to preserve the status quo during the pendency of the arbitration proceeding is by the granting of injunctive relief."  *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1067 (2d Cir. 1972); *see also Credit Suisse Sec. (USA) LLC v. Ebling*, No. 06-CV-11339, 2006 WL 3457693, at *3 (S.D.N.Y. Nov. 27, 2006) (finding irreparable harm and preliminary injunction warranted where "[w]ithout a preliminary injunction, the harm that Petitioner seeks to address via arbitration will occur before the arbitrator can render a decision, and Petitioner will lose its right to meaningfully resolve these [ ] disputes via arbitration.").

It is clear to this Court that if a preliminary injunction is not issued binding *both* parties to maintain the *status quo* the parties will continue to engage in activity that could irreversibly alter the *status quo* before the arbitrator can render a decision and the underlying arbitration will become "a 'hollow formality' "  *Blumenthal*, 910 F.2d at 1053.  A "district court must ensure that the parties get what they bargained for—a meaningful arbitration of the dispute," *id.*, because the loss of that right is an irreparable injury.  *Id.*; *see also Thales Avionics, Inc.*, 719 F. Supp. 3d at 347.  And here that is an irreparable injury faced by both parties.

## II.  The Parties Have Both Raised Serious Questions Going to the Merits of Their Competing Claims

To succeed on a motion for a preliminary injunction in aid of arbitration, the movant must show either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to

11

the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the moving party. *See Benihana, Inc.*, 784 F.3d at 894–95. "The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 38 (2d. Cir. 2010). "The value of an approach encompassing the serious questions standard 'lies in its flexibility in the face of varying factual scenarios and the greater uncertainties inherent at the outset of particularly complex litigation.' " *Gov't Emps. Ins. Co. v. Beynin*, No. 19-CV-06118, 2021 WL 1146051, at *6 (E.D.N.Y. Mar. 25, 2021) (quoting *Id.*).

Genius initiated the ICC arbitration asserting claims for breach of contract, based on alleged breaches of the representations and warranties in the Agreement, misrepresentation by materials omission, and breach of fiduciary duty. *See* Genius Mem. at 15–16. LZG is asserting counterclaims in the ICC arbitration for fraud in the inducement and breach of contract. LZG Mem. at 8.

To establish a breach-of-contract claim under New York law, a plaintiff must demonstrate: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) resulting damages. *See 34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52, 198 N.E.3d 1282, 1287 (2022); *see also Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). The parties do not dispute that an agreement, the APA, exists, or that it governs this dispute. [ECF No. 6–1]. However, the parties sharply debate which party failed to adequately perform and ultimately which party breached the APA. *See* First Hamilton Decl. ¶¶ 9–11, 16; First Ritz Decl. ¶¶ 14–19, 26. The

minimal record before the Court suggests that at the very least there are serious questions raised going to the merits of the competing claims of each party,[3] that permits this Court to issue a preliminary injunction to maintain the *status quo*. *See C.D.S., Inc. v. Bradley Zetler, CDS, LLC*, 190 F. Supp. 3d 375, 377 (S.D.N.Y. 2016), *aff'd*, 691 F. App'x 33 (2d Cir. 2017) (finding there are sufficiently serious questions on the merits of the moving party's claims because sufficient evidence was presented to demonstrate "serious questions and sharp factual disputes as to the merits of these claims"); *see also Thales Avionics, Inc.*, 719 F. Supp. 3d at 345.

Furthermore, the balance of hardships also decidedly weighs in favor of issuing a superseding preliminary injunction that maintains the *status quo* by mutually freezing the state of affairs for both sides pending the resolution of the arbitration since, for the reasons explained above, both parties face the same irreparable harm of the loss of the right to have their dispute decided by arbitration, *Blumenthal*, 910 F.2d at 1053, if an injunction is not issued. The existing preliminary injunction, [ECF No. 57], does not actually preserve the *status quo*, but rather enjoins only LZG from certain actions which arguably disadvantage Genius. But it contains no reciprocal protections of LZG's interests while the arbitration proceeds. *See* ECF No. 57 ("pending the resolution of the arbitration in the ICC, [LZG and its'] agents, employees, attorneys, and affiliates, and Vstock Transfer LLC are enjoined from: (1) selling, transferring, assigning, encumbering or otherwise disposing of [LZG's] shares of common stock . . . and (2) participating in Genius shareholder meetings and from participating in Genius shareholder voting.").

If the Court allows the existing preliminary injunction to stand and denies the reciprocal preliminary injunction subsequently requested by LZG, the balance of hardships will be clearly

---

[3] Both parties also assert arguments, and evidence, that the other party made material misrepresentations or omissions during the negotiations of the APA. Specifically, Genius is asserting a claim for misrepresentation by material omission and LZG is asserting a counterclaim of fraud in the inducement against Genius in the pending arbitration matter before the ICC.

lopsided causing LZG to face irreparable harm while Genius is protected from this same irreparable harm. This is inequitable. *See, e.g., Nikkal Indus., Ltd. v. Salton, Inc.*, 735 F. Supp. 1227, 1238 (S.D.N.Y. 1990) (explaining that equitable relief would be inappropriate where plaintiff engaged in the "very same conduct" it had challenged). This is especially true in light of the fact that Genius engaged in post-APA conduct, commenced the arbitration regarding the APA, and then came to Court seeking a preliminary injunction against LZG purportedly to maintain the *status quo* pending arbitration, but then a few days later, announced that it was modifying its business model. Second Hamilton Decl. ¶ 4; First Ritz Decl. ¶ 24.

The parties both have demonstrated sufficiently serious questions going to the merits of their competing claims and given the unbalanced hardships created by the one-sided preliminary injunction, the balance of hardships weighs in favor of a balanced preliminary injunction that maintains the *status quo* pending the arbitration.

### III. Public Interest Weighs in Favor of Issuing a Preliminary Injunction That Maintains the *Status Quo* For Both Parties

The public interest also weighs in favor of issuing a superseding preliminary injunction that maintains the *status quo* for both parties pending the resolution of the ICC arbitration because preserving the arbitrators' ability to order effective relief will further "the well-established federal public policy in favor of arbitration." *See Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 410 (2d Cir. 2009); *see also Empower Energies, Inc. v. SolarBlue, LLC*, 2016 WL 5338555, at *13 (S.D.N.Y. Sept. 23, 2016) ("[t]here is a well-recognized public interest in enforcing contracts and upholding the rule of law"); *see also Nimbus Therapeutics, LLC v. Celgene Corp.*, 570 F. Supp. 3d 100, 127 (S.D.N.Y. 2021) ("particularly true where, as here, the contract involves

14

sophisticated counterparties who engaged in actual negotiation over the provisions at issue").

The Court concludes that the public interest also weighs in favor of issuing a preliminary injunction that preserves the *status quo* and applies equally to both parties while the parties arbitrate.

## IV.     A Bond Is Required

Pursuant to Rule 65(c), "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper." Fed. R. Civ. Pro. 65(c). The language of Rule 65(c) confers broad discretion on the trial judge to set the amount of the bond, even to dispense with the bond requirement altogether. *See Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (citation omitted); *Clarkson Co., v. Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976). "[T]he burden is on the party seeking security to establish a rational basis for the amount of the proposed bond." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552 (S.D.N.Y. 2006), *aff'd*, 246 F. App'x 73 (2d Cir. 2007).

Genius has already posted a $500,000 bond, [ECF No. 64], pursuant to the prior preliminary injunction which will remain in effect for this superseding preliminary injunction. LZG must also post a $500,000 bond as security, in the event that Genius was improperly enjoined.

## CONCLUSION

This superseding preliminary injunction is doing exactly what Genius originally requested when it sought a preliminary injunction and what LZG has subsequently requested—maintaining the *status quo* while the parties arbitrate their disputes. *See* ECF No. 39, Dec. 10, 2024 Hearing Tr. at 10:21–23–10:25–11:1 ("So this proceeding was brought to maintain the status quo in aid of the arbitration action that was commenced by my client, Genius Group Limited . . . [t]hat's the only, singular purposes of this proceeding"). Accordingly, for the reasons set forth above,

IT IS HEREBY ORDERED that the prior preliminary injunction issued in this action [ECF No. 57] is VACATED, and the parties' separate motions seeking a preliminary injunction to maintain the *status quo* pending the resolution of the arbitration, [ECF Nos. 1, 58] are GRANTED. To avoid any confusion, this Order, only enjoins the parties and Vstock to the extent that necessary to preserve the *status quo*, which is the "last actual, peaceable uncontested status which preceded the pending controversy." *LaRouche*, 20 F.3d at 74 n. 7. Specifically, LZG and its agents, employees, attorneys, and affiliates, and Vstock are enjoined from selling, transferring, assigning, encumbering, or otherwise disposing of LZG's shares of common stock or stock certificates in Genius or taking any action that would enable LZG to sell, transfer, assign, encumber, or otherwise dispose of its Genius shares of common stock, pending the hearing and determination of the Arbitration. Genius is enjoined from issuing additional shares of its stock and from any manipulation of its shares, and from purchasing Bitcoin with funds from investors, funds raised from rights offerings, and funds raised from the purchase of additional shares, pending the hearing and determination of the arbitration.

IT IS FURTHER ORDERED that the bond previously posted by Genius [ECF No. 64] will remain in effect for the purposes of this superseding preliminary injunction. IT IS FURTHER ORDERED that on or before March 19, 2025 LZG shall post of a bond in the amount of $500,000 to provide security in the event that Genius has been wrongfully restrained.

IT IS FURTHER ORDERED that this action is stayed pending arbitration. As previously directed, the parties shall file a joint status report within three days of the appointment of the ICC arbitrator and every 45 days thereafter.

**SO ORDERED.**

**Dated: March 13, 2025**
**New York, New York**                                    _Mary Kay Vyskocil_
                                                          **HON. MARY KAY VYSKOCIL**
                                                          **United States District Judge**