UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENIUS GROUP LIMITED,

*Petitioner*,

-against-

LZG INTERNATIONAL, INC., MICHAEL THOMAS MOE and PETER RITZ,

*Respondents,*

VSTOCK TRANSFER, LLC,

*Nominal Respondent.*

Case No. 1:24-cv-8464-MKV

**PETITIONER GENIUS GROUP LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER IN AID OF ARBITRATION**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..... ii

STATEMENT OF FACTS ..... 1

LEGAL STANDARD ..... 3

A. Rule 65 of the Federal Rules of Civil Procedure ..... 3

B. CPLR § 7502(c) ..... 4

C. An Attorney's Duty of Loyalty ..... 5

ARGUMENT ..... 7

I. GENIUS WILL BE IRREPARBLY HARMED ABSENT A TRO ..... 7

II. GENIUS WILL LIKELY PREVAIL ON ITS REQUEST FOR DISQUALIFICATION ..... 8

III. THE BALANCE OF THE EQUITIES & PUBLIC INTEREST WEIGH IN FAVOR OF THE TRO ..... 12

CONCLUSION ..... 12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

*426 Realty Assoc., LLC v. Lynch*,
2019 N.Y. Misc. LEXIS 5304 (N.Y. Sup. Ct. Oct. 4, 2019) ....................6

*725 Eatery Corp. v. City of New York*,
408 F. Supp. 3d 424 (S.D.N.Y. 2019)....................4

*Aetna Ins. Co. v. Capasso*,
75 N.Y.2d 860 (N.Y. 1990) ....................5

*Albert Jacobs, LLP v. Parker*,
94 A.D.3d 919 (2d Dep't 2012) ....................6

*Arifi v. De Transport Du Cocher. Inc.*,
290 F. Supp. 2d 344 (E.D.N.Y. 2003) ....................5

*Cinema 5, Ltd. v. Cinerama, Inc.*,
528 F.2d 1384 (2d Cir. 1976)....................7

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d. Cir. 2010)....................3, 4, 9

*Cohen v. Cohen*,
125 A.D.3d 589 (2d Dep't 2015) ....................6

*Decora Inc. v. DW Wallcovering, Inc.*,
899 F. Supp. 132 (S.D.N.Y. 1995)....................9

*Evans v. Artek Sys Corp.*,
715 F.2d 788 (2d Cir. 1983)....................9

*Felix v. Balkin*,
49 F. Supp. 2d 260 (S.D.N.Y. 1999)....................6

*Glueck v. Jonathan Logan, Inc.*,
653 F.2d 746 (2d Cir. 1981)....................7

*Gjoni v. Swan Club, Inc.*,
134 A.D.3d 896 (2d Dep't 2015) ....................6

*GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*,
618 F.3d 204 (2d Cir. 2010)....................7

*H.I.G. Cap. Mgmt, Inc. v. Ligator*,
233 A.D.2d 270 (1st Dep't 1996) ....................4

*Hull v. Celanese Corp.*,
513 F.2d 568 (2d Cir. 1975)....................6

*In re "Agent Orange" Prod. Liab. Litig.*,
800 F.2d 14 (2d Cir. 1986)....................5

*In re Cullman Ventures, Inc.*,
682 N.Y.S.2d 391 (1st Dep't 1998) ....................4

*In re Guarini*,
650 N.Y.S.2d 4 (1st Dep't 1996) ....................4

*In re Morgan Guar. Trust Co.*,
151 Misc. 2d 863 (Suffolk Sur. Ct. 1991)....................11

*Liu v. Real Estate Inv. Group. Inc.*,
771 F. Supp 83 (S.D.N.Y. 1991)....................12

*Narel Apparel Ltd., Inc v. Am. Utex Int'l*,
92 A.D.2d 913 (2d Dep't 1983) ....................11

*New England Sec. Corp. v. Stone*,
941 N.Y.S.2d 539 (Kings Cnty. 2011)....................8, 11, 12

*New York v. Liuzzo*,
562 N.Y.S.2d 303 (4th Dep't 1990)....................5

*New York v. McLaughlin*,
662 N.Y.S.2d 1019 (N.Y. Sup. Ct. 1997) ....................5

*Papyrus Tech. Corp. v N.Y. Stock Exch., Inc.*,
325 F. Supp 2d 270 (S.D.N.Y. 2004)....................9

*Polymer Technology Corp. v. Mimran*,
37 F.3d 74 (2d Cir. 1994)....................4

*Regeneron Pharms, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
510 F. Supp. 3d 29 (S.D.N.Y. 2020)....................4

*Saftler v. Government Employees Ins. Co.*,

95 A.D.2d 54 (1st Dep't. 1983) ....................6

*Solow v. W.R. Grace & Co.*,
83 N.Y.2d 303 (N.Y. 1994) ....................9

*T.C. Theatre Corp. v. Warner Bros Pictures, Inc.*,
113 F. Supp. 265 (S.D.N.Y. 1953)....................9, 10

*Tekni-Plex, Inc. v Meyner and Landis*,
89 N.Y.2d 123 (N.Y. 1996) ....................6

*United States v. Falzone*,
766 F. Supp. 1265 (W.D.N.Y. 1991) ....................5

*Walter Karl, Inc. v. Wood*,
137 A.D.2d 22 (2d Dep't 1988) ....................5

*Winter v. Brown*,
49 A.D.3d 526 (2d Dep't 2008) ....................4

*WPIX, Inc. v. ivi, Inc.*,
691 F.3d 275 (2d. Cir. 2012)....................4, 8

**Statutes, Rules and Other Authorities:**

ABA Model Rule 1.7 ....................11

CPLR § 7502(c) ....................4, 5, 8

Fed. R. Civ. P. 65 ....................3

Eric J. Wallach, Litigating "Raiding" Cases, 1166 PLI/Corp. 285, (2000) ....................5

N.Y. Code Prof. Resp., Disciplinary Rule 5-101(A) ....................11

N.Y. Code Prof. Resp., Disciplinary Rule 5-105(A) ....................11

N.Y. Code Prof. Resp., Disciplinary Rule 5-108(A)(1)....................9

Genius Group Limited (“**Genius**”) respectfully moves this Court for (a) a temporary restraining order (“**TRO**”) to prevent attorney Christopher Serbagi from acting in further violation of the professional and ethical obligations owed to his current and former clients, and (b) an order disqualifying Mr. Serbagi from representing LZG International, Inc. (“**LZG**”). Specifically, after withdrawing from representing LZG, Michael Thomas Moe (“**Moe**”) and Peter Ritz (“**Ritz**”) in response to this Court noting that there was concerns as to a “conflict of interest or interfer[ence] with [his] separate and professional and ethical obligations to both” LZG (as a former client) and Ritz and Moe (as current clients), ECF 138 (Order to Show Cause, dated Aug. 7, 2025), Mr. Serbagi has now re-appeared in the related ICC Arbitration Proceeding as counsel for LZG—the party he initially sought to withdraw from representing. Such engagement threatens the integrity of the ICC arbitration proceeding and, furthermore, can only proceed in contravention of the duty of loyalty he owes to both his current (LZG) and former (Ritz and Moe) clients.

## STATEMENT OF FACTS

Following the unexpected withdrawal of King & Spalding, LLP [ECF 132], attorney Christopher Serbagi appeared as counsel for LZG, Ritz and Moe, *first*, in the ICC Arbitration Proceeding (on July 21, 2025), *and second*, in this matter (on July 22, 2025 [ECF 136]).

Mr. Serbagi immediately began to advocate for his clients; he appeared at conferences, prepared and filed LZG’s Answer to Genius’ Second Request for Arbitration (along with affirmative defenses and counterclaims set forth therein) and made a request for a Threshold Ruling. *See* Declaration of Mark Basile, Esq. (“**Basile Decl.**”), ¶ 9. Mr. Serbagi sought to further assist LZG, Ritz and Moe when, on August 4, 2025, he sought—through the assistance of LZG, Moe and Ritz’s Florida counsel, the Dhillon Law Group, Inc. (“**Dhillon Law**”)—*pro hac*

admission in the related matter of *Shawn Carey et. al. v. Michael Moe et. al.*, Case No. 2024-019773-CA-01 (Fla. 11th DCA) (the "**LZG Derivative Action**").

Mr. Serbagi's engagement (as well as Dhillon Law's), however, was complicated when on July 25, 2025, Judge Walsh issued orders in the LZG Derivative Action. The orders, in relevant part, found that "Peter B. Ritz and Michael Moe are liable for breaching their fiduciary duties to LZGI" and, thus, "Michael Moe and Peter B. Ritz shall be immediately removed from the Board of Directors of LZG International, Inc." and "Peter B. Ritz shall be immediately removed from his position as Chief Executive Officer of the LZG International, Inc." *See* **Exhibit A** and **Exhibit B** (together, the "**Judicial Removal Orders**") to the Basile Decl.[1]

The response to the Judicial Removal Orders was widespread. On August 4, 2025, Dhillon Law moved to withdraw from its representation of LZG, stating that it "believes it can no longer represent LZG while also representing Defendants Moe and Ritz without creating a conflict of interest" and that "LZG should retain its own independent counsel." *See* Basile Decl. ¶ 6, **Exhibit C** to the Basile Decl., ¶ 3. In connection with its withdrawal, Dhillon Law also withdrew its *pro hac* motion for Mr. Serbagi.

Mr. Serbagi, initially, appeared to follow suit. On August 3, 2025, Mr. Serbagi filed a letter with Arbitrator MacGrath, stating that "upon further reflection" of the Judicial Removal Orders, Mr. Serbagi would need to withdraw from representing LZG. Also on August 3, Mr. Serbagi moved to withdraw as counsel for LZG in this action, stating that "[w]ithdrawal is necessitated because of the existence of an actual or perceived conflict of interest between the individual respondents and the Company LZGI." *See* ECF 137.

[1] It is Genius' understanding that the Judicial Removal Orders were not published and made publicly available until August 4, 2025.

The Court, however, promptly noted that his withdrawal from representing LZG, but continued representation of Moe and Ritz, gave rise to a "separate professional and ethical obligations to both present and former clients," ECF 138, and, therefore, requested that Mr. Serbagi address how he could continue to represent Moe and Ritz on or before August 15, 2025. *Id.* It initially appeared that, after contemplating the issue further, Mr. Serbagi realized that he could not continue to represent Moe and Ritz and, on August 15, Mr. Serbagi filed a revised motion to withdraw from representation of LZG, Moe and Ritz. *See* ECF 139.

But only days later, Mr. Serbagi made an about face and, on August 17, 2025, Mr. Serbagi contacted Arbitrator Dana MacGrath to inform her that "LZG has been reconstituted with a new CEO who has appointed me legal counsel for the Company." *See* Basile Decl., ¶ 8. Of particular importance is that LZG's new director (John New) was appointed by, in part, Moe and Ritz, in their capacity as shareholders of LZG. *See* Basile Decl., ¶ 7; **Exhibit D** to the Basile Decl. Further noteworthy is that despite this Court drawing attention to Mr. Serbagi's professional and ethical obligations he owes to both current and former clients, he did not articulate how he could continue to represent LZG's best interests (without conflicting with the duties, obligations and loyalties he owes to Moe and Ritz).

## LEGAL STANDARD

### A. Rule 65 of the Federal Rules of Civil Procedure

To obtain injunctive relief, the requesting party must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and (c) a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d. Cir. 2010) (citations omitted). Harm may

be irreparable "where the loss is difficult to replace or measure, or where [the requesting party] should not be expected to suffer the loss." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d. Cir. 2012). Moreover, a moving party "need only show a likelihood of success on the merits of at least one of [its] claims." *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) (citation omitted). The probability of prevailing need only be more than fifty percent. *See Regeneron Pharms, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 510 F. Supp. 3d 29, 41 (S.D.N.Y. 2020). Alternatively, the "serious questions" standard allows a district court to grant injunctive relief "in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Global Markets*, 598 F.3d at 35. A decision to grant injunctive relief is "committed to the discretion of the district court." *Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994).

**B. CPLR § 7502(c)**

CPLR § 7502(c) provides that a court may grant a preliminary injunction "in connection with an arbitration that is pending … upon the ground that the [arbitration] award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." "A party seeking relief under [CPLR § 7502(c)] must also make a showing of the traditional equitable criteria for the granting of [a preliminary injunction] under CPLR [§ 6301]." *Winter v. Brown*, 49 A.D.3d 526, 529 (2d Dep't 2008); *In re Cullman Ventures, Inc.*, 682 N.Y.S.2d 391, 396 (1st Dep't 1998) ("We apply the general criteria governing the issuance of injunctive relief to an application for a preliminary injunction under CPLR 7502(c)"); *but H.I.G. Cap. Mgmt, Inc. v. Ligator*, 233 A.D.2d 270, 650 (1st Dep't 1996) (holding that "rendered ineffectual" standard is "**sole** applicable standard" in deciding § 7502(c) motion); *In re Guarini*, 650 N.Y.S.2d 4, 4-5 (1st Dep't 1996)

(holding that trial court "properly refused to consider the merits" of arbitrable claim that was basis for petitioner's § 7502(c) motion); *see also* Eric J. Wallach, Litigating "Raiding" Cases, 1166 PLI/Corp. 285, 299 (2000) ("In New York State … the standard for granting temporary or preliminary injunctive relief in aid of arbitration is a **significantly less onerous** standard than the normal elements.") (emphasis added). "[I]n order to prevail on a motion for a preliminary injunction [under CPLR § 6301], the movant has the burden of demonstrating (1) a likelihood of ultimate success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) that a balancing of equities favors the movant's position." *Walter Karl, Inc. v. Wood*, 137 A.D.2d 22, 26 (2d Dep't 1988); *see also Aetna Ins. Co. v. Capasso*, 75 N.Y.2d 860, 862 (N.Y. 1990).

**C. An Attorney's Duty of Loyalty**

An attorney owes the duty of loyalty to both current and former clients. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 17 (2d Cir. 1986); *Arifi v. De Transport Du Cocher. Inc.*, 290 F. Supp. 2d 344, 348 (E.D.N.Y. 2003). "The duty of loyalty is broader than the attorney-client privilege and an attorney is not free to attack a former client with respect to the subject matter of the earlier representation…" *New York v. Liuzzo*, 562 N.Y.S.2d 303, 304 (4th Dep't 1990); *United States v. Falzone*, 766 F. Supp. 1265, 1279 (W.D.N.Y. 1991) ("While the Court is not bound by this decision, it finds the *Liuzzo* decision persuasive because state and federal courts apply the same ethical standard, the Code of Professional Responsibility."). A conflict of interest—warranting preclusion and/or disqualification from the subsequent representation—arises when "an attorney's current representation is impaired by the loyalty he owes a former client," *New York v. McLaughlin*, 662 N.Y.S.2d 1019, 1022 (N.Y. Sup. Ct. 1997). Such a conflict particularly arises when a new or current client's matter concerns matters substantially related to

those of the former client, the attorney should be precluded from representing the new client. *See, e.g., Felix v. Balkin*, 49 F. Supp. 2d 260, 268 (S.D.N.Y. 1999) (holding that attorneys should be disqualified where the substantial relationship test is met "in order to assure that the confidentiality of the attorney-client relationship and the loyalty between attorney and client are preserved"); *Tekni-Plex, Inc. v Meyner and Landis*, 89 N.Y.2d 123, 130 (N.Y. 1996) (holding "in accordance with [the duties of loyalty and confidentiality], the Code [of Professional Responsibility] **precludes** attorneys from representing interests adverse to a former client on matters substantially related to the prior representation.") (emphasis added); *see also* Canon 9 of the American Bar Association's (ABA) Model Code of Professional Responsibility ("A lawyer should avoid even the appearance of professional impropriety.").[2]

"Any doubts as to the existence of a conflict of interest must be resolved in favor of disqualification so as to avoid even the appearance of impropriety," *Gjoni v. Swan Club, Inc.*, 134 A.D.3d 896, 897 (2d Dep't 2015) (*citing Cohen v. Cohen*, 125 A.D.3d 589, 590 (2d Dep't 2015), "even when an actual conflict of interest may not exist," *id.* (citing *Albert Jacobs, LLP v. Parker*, 94 A.D.3d 919, 919 (2d Dep't 2012) (affirming disqualification when there was a mere "danger that confidences were disclosed"); *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975) ("[I]n the disqualification situation, any doubt is to be resolved in favor of disqualification") (citation omitted); *Saftler v. Government Employees Ins. Co.*, 95 A.D.2d 54, 62 (1st Dep't. 1983) ("Since a lawyer is obliged to avoid even the appearance of impropriety, any question should be decided in

[2] *See also 426 Realty Assoc., LLC v. Lynch*, 2019 N.Y. Misc. LEXIS 5304, at *9 (N.Y. Sup. Ct. Oct. 4, 2019) ("Thus, pursuant to section 1.7 of the Rules of Professional Conduct, an attorney may not act as an advocate in a matter where he or she has a conflict of interest with his or her current client."); Section 1.7 of the Rules of Professional Conduct ("Conflict of interest: current clients. (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgement on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.").

favor of disqualification."); *see also GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209-10 (2d Cir. 2010) ("One established ground for disqualification is concurrent representation, an attorney's simultaneous representation of one existing client in a matter adverse to another existing client. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 [2d Cir. 1976]. Because concurrent representation is '*prima facie* improper,' it is incumbent upon the attorney to 'show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.' *Id.* at 1387. **We have noted that this is 'a burden so heavy that it will rarely be met.'** *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 [2d Cir. 1981].") (emphasis added).

## ARGUMENT

### I. GENIUS WILL BE IRREPARBLY HARMED ABSENT A TRO

Genius faces irreparable harm in that Mr. Serbagi's continued representation of LZG compromises the integrity of the Arbitration and any relief that it may obtain thereunder.[3] Moreover, Mr. Serbagi's continued involvement could put the ethical obligations he owes to LZG at odds with those he owes to Ritz and Moe; indeed, if it revealed that—*like another court has already found*[4]—Ritz and Moe acted in an improper, fraudulent manner when negotiating, entering into and performing the Purchase Agreement [ECF 1-1], LZG (Mr. Serbagi's current client) will unavoidably need to make such arguments adverse to the interests of Ritz and Moe (Mr. Serbagi's

---

[3] Genius, indeed, has specific concerns as to the ultimate resolution of the Arbitration and whether, for example, LZG would seek to challenge and set aside an unfavorable final award due to Mr. Serbagi's conflict. Given that Genius has no interest in dedicating and expending substantial time and resources to the Arbitration, it goes without saying that it would like to preclude any defects that could render the Arbitration void and force this entire dispute proceeding to "go back to start."

[4] *See* Judicial Removal Orders.

former clients). This unavoidable conflict could compromise Mr. Serbagi's credibility during the proceedings.

The foregoing harms have warranted the exact relief that Genius seeks here—an injunction for disqualification of counsel. *See, e.g., New England Sec. Corp. v. Stone*, 941 N.Y.S.2d 539 (Kings Cnty. 2011) (granting CPLR § 7502(c) injunction to exclude counsel after finding, *inter alia*, violation of the Rules of Professional Conduct could "fundamentally compromise[] the integrity of the Arbitration and any relief which [a party] may obtain thereunder" and, thus, "disqualification [was] essential to protect the integrity of the Arbitration and avoid tainting that proceeding" because the his continued involvement posed an imminent and irreparable threat that would not be compensable by monetary damages). They cannot be remedied by an award of monetary damages and, therefore, constitute irreparable harm *per se*. *Accord New England*, 941 N.Y.S.2d 539; *WPIX*, 691 F.3d at 285. Thus, the first element for injunctive relief has been met.

## II. GENIUS WILL LIKELY PREVAIL ON ITS REQUEST FOR DISQUALIFICATION

There is no disputing that Mr. Serbagi previously represented *both* LZG and Ritz and Moe, in this proceeding and the Arbitration and as it relates to the dispute arising from the Purchase Agreement. *See* ECF 134, 136. Likewise, there is no dispute that Mr. Serbagi had to withdraw from his representation of all three parties after identifying "an actual or perceived conflict of interest between LZGI" and Ritz and Moe, largely due to the decision rendered in the LZG Derivative Action by Judge Walsh, who found that Ritz and Moe engaged in malfeasance against LZG. *See* Judicial Removal Orders; ECF 137-1, ¶¶ 2-3; *see also* ECF 138. Given that acts taken by Mr. Serbagi's former clients (Ritz and Moe) have been found to be adverse to his new client (LZG), and such acts directly tie to their management of LZG (including but not limited to the

Purchase Agreement), it is highly likely—*if not inevitable*—that Genius will prevail on its request for Mr. Serbagi's disqualification.[5]

When evaluating whether an attorney must be disqualified, New York State and Federal Courts apply the "substantial relationship' test, under which an attorney must be disqualified where the present controversy is substantially related to the former representation. *Evans v. Artek Sys Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) ("An attorney may be disqualified from representing a client in a particular case if: … (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and…"); *see also Solow v. W.R. Grace & Co.*, 83 N.Y.2d 303, 308-09 (N.Y. 1994); *Papyrus Tech. Corp. v N.Y. Stock Exch., Inc.*, 325 F. Supp 2d 270, 276-77 (S.D.N.Y. 2004); N.Y. Code Prof. Resp., Disciplinary Rule 5-108(A)(1). Establishing that there is a substantial relationship between the prior representation and the present controversy is sufficient for disqualification without requiring the movant to show actual prejudice, because compelling a party to reveal "the actual confidential matters previously entrusted to the attorney and their possible value to the present client would tear aside the protective cloak drawn about the lawyer-client relationship." *T.C. Theatre Corp. v. Warner Bros Pictures, Inc.*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953); *accord Decora Inc. v. DW Wallcovering, Inc.*, 899 F. Supp. 132, 136 n.3 (S.D.N.Y. 1995) (discussing the

---

[5] When considering granting injunctive relief, a court may also consider whether there are sufficiently serious questions going to the merits to make them a fair ground for litigation. *Citigroup Global Markets*, 598 F.3d at 35. This standard allows a court "flexibility in the face of varying factual scenarios and the greater uncertainties at the outset of particularly complex litigation." *Id.*

For the reasons set forth herein, there are sufficiently serious questions as to whether Mr. Serbagi can fulfill the duties of loyalty that he owes to *both* LZG and his former clients, Ritz and Moe. To wit, there is a sufficiently serious question as to whether Mr. Serbagi could (and would) vigorously and effectively argue—should the facts support so—that Ritz and Moe acted in a deceitful, fraudulent manner when, *inter alia*, negotiating and performing the Purchase Agreement, particularly since Mr. Serbagi's renewed engagement was endorsed by Ritz and Moe, albeit in their capacity as LZG shareholders. *See* **Exhibit D** to Basile Decl.; Judicial Removal Orders.

substantial relationship test and stating that "[a]n attorney's access to privileged information is sufficient to warrant disqualification, because there is a presumption that access to privileged information will be accompanied by actual possession of such information") (citations omitted).

Mr. Serbagi's representation of LZG is not just substantially related to his prior representation of Ritz and Moe, **it concerns the exact same dispute.** Indeed, the representation concerns the Purchase Agreement by and between Genius and LZG, which includes Ritz and Moe's involvement—as agents of LZG—in the negotiation, due diligence, execution and performance of the Purchase Agreement. *See, e.g.,* ECF 1, *et seq.*; ECF 6; ECF 59; *see also* ECF 57; ECF 99. It, therefore, cannot be disputed that Mr. Serbagi acquired privileged information from Ritz and Moe about their conduct[6] when, *inter alia*, they sought his engagement and—after finalizing that representation—he familiarized himself with the substance of this action and the Arbitration, their respective procedural histories and prepared filings relevant to each. *See, e.g.,* Basile Decl., ¶ 4; ECF 134 (alleging Genius had violated the Court's March 13, 2025 preliminary injunction); *see also T.C. Theatre Corp.*, 113 F. Supp. at 268 (when it is shown the subsequent relationship is substantially related to the prior, "[t]he Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.").[7] Since it is not only disputed, but also has been found (*see*

---

[6] Indeed, Ritz and Moe have been recognized as the **sole** directors and officers of LZG during all times relevant to the negotiations, due diligence, entry and performance of the Purchase Agreement. *See, e.g.,* Purchase Agreement (executed by Ritz, CEO of LZG); ECF 60 ("I am the Chief Executive Officer ('CEO') and co-founder of LZG International, Inc. ('LZG'). I have personal knowledge of the matters discussed in this declaration…"); **Exhibit C** at ¶ 6 (noting after the Judicial Removal Orders ejected Ritz and Moe from LZG that "LZG currently has no officers and no directors").

[7] Genius finds it particularly noteworthy that in the LZG Derivative Action, Dhillon Law, who appeared on July 25, 2025, as substitute counsel following King & Spalding LLP's June 16, 2025, withdrawal, **immediately** sought withdrawal from representing the three, aforementioned parties upon the issuance of the Judicial Removal Orders. *See* **Exhibit C** at ¶¶ 1-3 (noting that Dhillon Law was engaged on July 25, 2025, the same date of the Judicial Removal Orders, and upon review thereof "believe[d] that it can no longer represent LZG while also representing Defendants Moe and Ritz **without creating a conflict of**

*generally* Judicial Removal Orders), that Ritz and Moe's decisions and acts were not in best interests of LZG (but, rather, their own), it is impossible that Mr. Serbagi could adhere to and uphold the duty of loyalty he owes to both LZG, on the one hand, and Moe and Ritz, on the other. Because there is a very real possibility that Mr. Serbagi's representation of LZG may force him to, *inter alia*, act upon privileged information he acquired and pursue claims against his former clients. Mr. Serbagi's immediate disqualification is, therefore, the only appropriate response here. *Accord New England*, 941 N.Y.S.2d 539 (finding the attorney's "disqualification is essential to protect the integrity of the Arbitration and avoid tainting that proceeding because of the conflict of interest that [the attorney's] actions and participation in this matter have created."); *Narel Apparel Ltd., Inc v. Am. Utex Int'l*, 92 A.D.2d 913 (2d Dep't 1983) ("It is not essential that there be proof positive that confidential information will necessarily be disclosed in the course of the litigation" when finding in favor of disqualification of counsel).[8]

**interest**" and that "LZG should retain its **own independent counsel**") (emphasis added, citing Rules Regulating the Florida Bar).

Genius further notes that, prior to Dhillon Law's Motion to Withdraw, it had filed a motion for Mr. Serbagi's *pro hac* admission, which was withdrawn in connection with Dhillon Law's Motion to Withdraw. It is not unreasonable to state that Dhillon Law communicated its concerns about continued representation of LZG to Mr. Serbagi, who nonetheless has agreed to continue LZG in spite of the Dhillon Law and this Court's concerns. *See also* ECF 138.

[8] *See also* ECF 137 ("Withdrawal is necessitated because of the existence of an actual or perceived conflict of interest between [Ritz and Moe] and the Company LZGI."); ECF 139 (same); *In re Morgan Guar. Trust Co.*, 151 Misc. 2d 863 (Suffolk Sur. Ct. 1991) ("Loyalty is the essential ingredient in the relationship of attorney and client. A lawyer who agrees to represent a client shall exercise his professional judgment solely for the benefit of his client divorced from any competing consideration. Furthermore, if at the time of retention it is apparent that there exists an **actual or potential** conflict of interest then the attorney is ethically obligated to decline to act for the client.") (emphasis added, citing New York Code of Professional Responsibility, DR 5-105(A), DR 5-101(A) and ABA Model Rule 1.7).

### III. THE BALANCE OF THE EQUITIES & PUBLIC INTEREST WEIGH IN FAVOR OF THE TRO

LZG will not face any hardship at the early juncture of the Arbitration; Genius has not answered LZG's counterclaims, and the discovery process has not even commenced. *See* ECF 133; Basile Decl., ¶¶ 4, 8-10. LZG—like it has several times before—can easily engage substitute counsel that, in addition to not having a preexisting relationship with LZG, can familiarize themselves with the nature of the dispute and effectively represent LZG. *New England*, 941 N.Y.S.2d 539 (granting preliminary injunction and disqualifying counsel, finding the clients "will suffer no hardship at this early juncture in the Arbitration."). Conversely, Genius faces substantial hardship because (again) it could be forced to participate in an arbitration that could ultimately be found compromised and, thus, any judgment made therein declared null and void. *Id.*

The equities and public interest further weigh in favor of the TRO; indeed, the ABA has recognized that Mr. Serbagi's conflicting representations will "erode public confidence in the judicial system and the legal profession." *Liu v. Real Estate Inv. Group. Inc.*, 771 F. Supp 83, 87 (S.D.N.Y. 1991) (citing Canon 9). Accordingly, the TRO satisfies the final element for immediate injunctive relief.

## CONCLUSION

For the foregoing reasons, Genius respectfully requests the Court (1) grant Genius' TRO application, (2) immediately restrain and enjoin Mr. Serbagi from (a) participating in the Arbitration, (b) communicating with and/or appearing before the Tribunal in the Arbitration, (c) representing or otherwise advocating on behalf of LZG before the Tribunal as counsel of record and (d) appearing in the Arbitration in any capacity other than as a fact witness, and (3) award any such other and further relief as the Court deems just and proper.

Dated: August 25, 2025
Jericho, NY

/s/ Mark R. Basile
Mark R. Basile, Esq.
THE BASILE LAW FIRM P.C.
390 N. Broadway, Ste. 140
Jericho, NY 11753
Tel.: (516) 455-1500
Fax: (631) 498-0748
Email: mark@thebasilelawfirm.com

*Counsel for Petitioner*
*Genius Group Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of August 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Mark R. Basile*