UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENIUS GROUP LIMITED,

               *Petitioner*,

       -against-

LZG INTERNATIONAL, INC., MICHAEL THOMAS MOE and PETER RITZ,

              *Respondents,*

VSTOCK TRANSFER, LLC,

              *Nominal Respondent.*

1:24-cv-8464-MKV

**PETITIONER GENIUS GROUP LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR DISQUALIFICATION**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT OF FACTS ....................................................................................................2

LEGAL STANDARDS .........................................................................................................5

    A.  An Attorney's Duty of Loyalty..................................................................................5

    B.  Conflict of Interest with Current and Former Clients ............................................5

    C.  Substantial Relationship Between Prior Representation and Present Controversy .............7

ARGUMENT .......................................................................................................................8

    I.  MR. SERBAGI'S UNAVOIDABLE CONFLICT OF INTEREST RISKS COMPROMISING THE INTEGRITY OF THE ARBITRATION AND FUTURE FINAL ARBITRATION AWARD ............................................................8

        A.  The Court Possesses the Inherent Power to Preserve the Integrity of the Arbitration ..................................................................................................8

        B.  Mr. Serbagi's Concurrent Conflicts of Interest Warrant Disqualification ...................10

        C.  LZG will not Suffer Hardship or Prejudice as a Result of Mr. Serbagi's Disqualification ......................................................................................12

CONCLUSION ..................................................................................................................13

i

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*426 Realty Assoc., LLC v. Lynch*,
   2019 N.Y. Misc. LEXIS 5304 (N.Y. Sup. Ct. Oct. 4, 2019) ...................................................6

*Albert Jacobs, LLP v. Parker*,
   94 A.D.3d 919 (2d Dep't 2012) ...............................................................................................6

*Arifi v. De Transport Du Cocher. Inc.*,
   290 F. Supp. 2d 344 (E.D.N.Y. 2003) .....................................................................................5

*Cinema 5, Ltd. v. Cinerama, Inc.*,
   528 F.2d 1384 (2d Cir. 1976) ...................................................................................................6

*Cohen v. Cohen*,
   125 A.D.3d 589 (2d Dep't 2015) .............................................................................................6

*Decora Inc. v. DW Wallcovering, Inc.*,
   899 F. Supp. 132 (S.D.N.Y. 1995) ..........................................................................................7

*Evans v. Artek Sys. Corp.*,
   715 F.2d 788 (2d Cir. 1983) .....................................................................................................7

*First NBC Bank v. Murex, LLC*,
   259 F. Supp. 3d 38 (S.D.N.Y. 2017) ........................................................................................8

*Felix v. Balkin*,
   49 F. Supp. 2d 260 (S.D.N.Y. 1999) .......................................................................................5

*Glueck v. Jonathan Logan, Inc.*,
   653 F.2d 746 (2d Cir. 1981) .....................................................................................................7

*Gjoni v. Swan Club, Inc.*,
   134 A.D.3d 896 (2d Dep't 2015) .............................................................................................6

*GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*,
   618 F.3d 204 (2d Cir. 2010) ............................................................................................6, 12

*Hempstead Video. Inc. v. Incorporated Village of Valley Stream*,
   409 F.3d 127 (2d Cir. 2005) .....................................................................................................8

*Hull v. Celanese Corp.*,
    513 F.2d 568 (2d Cir. 1975)..................................................................................................6

*In re "Agent Orange" Prod. Liab. Litig.*,
    800 F.2d 14 (2d Cir. 1986)....................................................................................................5

*In re Manshul Constr. Corp.*,
    1998 U.S. Dist. LEXIS 10885 (S.D.N.Y. Jul. 13, 1998) ...........................................................13

*In re Morgan Guar. Trust Co.*,
    151 Misc. 2d 863 (Suffolk Sur. Ct. 1991).............................................................................12

*Liu v. Real Estate Inv. Group. Inc.*,
    771 F. Supp 83 (S.D.N.Y. 1991)............................................................................................13

*Narel Apparel Ltd., Inc v. Am. Utex Int'l*,
    92 A.D.2d 913 (2d Dep't 1983)............................................................................................11

*New England Sec. Corp. v. Stone*,
    941 N.Y.S.2d 539 (Kings Cnty. 2011)......................................................................8, 11, 12

*New York v. Liuzzo*,
    562 N.Y.S.2d 303 (4th Dep't 1990)........................................................................................5

*New York v. McLaughlin*,
    662 N.Y.S.2d 1019 (N.Y. Sup. Ct. 1997) ...............................................................................5

*Papyrus Tech. Corp. v N.Y. Stock Exch., Inc.*,
    325 F. Supp 2d 270 (S.D.N.Y. 2004).....................................................................................7

*Saftler v. Government Employees Ins. Co.*,
    95 A.D.2d 54 (1st Dep't. 1983) ............................................................................................6

*Solow v. W.R. Grace & Co.*,
    83 N.Y.2d 303 (N.Y. 1994) ...................................................................................................7

*T.C. Theatre Corp. v. Warner Bros Pictures, Inc.*,
    113 F. Supp. 265 (S.D.N.Y. 1953).....................................................................................7, 10

*Tekni-Plex, Inc. v Meyner and Landis*,
    89 N.Y.2d 123 (N.Y. 1996) ...................................................................................................5

*United States v. Falzone*,
    766 F. Supp. 1265 (W.D.N.Y. 1991)......................................................................................5

iii

iv

**Statutes, Rules and Other Authorities:**

ABA Model Rule 1.7 ................................................................................................................6, 12

N.Y. Code Prof. Resp., Disciplinary Rule 5-101(A) ........................................................................12

N.Y. Code Prof. Resp., Disciplinary Rule 5-105(A) ........................................................................12

N.Y. Code Prof. Resp., Disciplinary Rule 5-108(A)(1) .....................................................................7

Petitioner Genius Group Limited ("**Genius**") respectfully moves this Court for an order disqualifying attorney Christopher Serbagi from representing and/or assisting Respondent LZG International, Inc. ("**LZG**") in any matter related to the dispute between Genius and LZG and arising from a certain Purchase Agreement, including but not limited to the ICC Arbitration proceeding entitled *Genius Group Ltd. vs. LZG Int'l, Inc, et al*, 29043/PDP (EPP) (the "**Arbitration**").

It is fundamental, black letter law that federal courts possess the inherent power to maintain the integrity of the adversary process. Currently, the integrity of the Arbitration, and a final award arising therefrom, is at great risk due to Mr. Serbagi's concurrent conflicts of interest between his representation of LZG in the Arbitration and his former clients Michael Thomas Moe ("**Moe**") and Peter Ritz ("**Ritz**"), LZG's former executives and non-parties to the Arbitration. Mr. Serbagi's disqualification is *essential* to protect the integrity of the Arbitration, prevent the parties from being forced to participate in an arbitration proceeding that could ultimately be found to be compromised and prevent the parties from needing to start the Arbitration over again should a final award be vacated. The considerable time and resources the parties have already expended, and will expend as the Arbitration continues forward, could be for naught as any judgment made by the Arbitrator is at risk of being declared null and void and subject to vacatur. It is abundantly clear that such risks to the adversary process warrants Mr. Serbagi's disqualification.

To explain, Mr. Serbagi's involvement in this proceeding began when he appeared on behalf of LZG and its former executives—Moe and Ritz—in this Court, the Arbitration and the related Florida state court proceeding. Mr. Serbagi's continued representation of all three parties was, however, put at risk on July 25, 2025, when a ruling was issued in the related matter of *Shawn Carey et. al. v. Michael Moe et. al.*, Case No. 2024-019773-CA-01 (Fla. 11th DCA) (the "**LZG**

1

**Derivative Action**"), finding Moe and Ritz were fraudulent actors that inflicted harm on LZG and, therefore, were judicially removed from their roles within LZG. *See* **Exhibits A** and **B** to the Declaration of Mark Basile, Esq. ("**Basile Decl.**"). This development led to Mr. Serbagi seeking to withdraw from his representation of LZG. This Court, however, acknowledged that it was not that simple; to wit, this Court expressly noted that by withdrawing from his representation of LZG while continuing to represent Moe and Ritz could give rise to a "conflict of interest or interfer[ence] with [his] separate and professional and ethical obligations to both" LZG (as a former client) and Ritz and Moe (as current clients), *see* ECF 138 (Order to Show Cause, dated Aug. 7, 2025).

Rather than address how he could alleviate the conflict, Mr. Serbagi withdrew from representing LZG, Moe and Ritz on August 18, 2025, *see* ECF 140; but merely days later, Mr. Serbagi reappeared as counsel for LZG in the Arbitration (unbeknownst to the Court).

Absent demonstrating that Mr. Serbagi's will not run afoul of the professional and ethical obligations he owes to both LZG and Moe and Ritz, Mr. Serbagi should be disqualified to ensure his continued involvement does not taint the proceedings.

## STATEMENT OF FACTS

Following the unexpected withdrawal of King & Spalding, LLP [ECF 132], Mr. Serbagi entered an appearance as counsel of record for LZG, Ritz and Moe—*first*, in the Arbitration (on July 21, 2025), *second*, in this matter (on July 22, 2025 [*see* ECF 136]) *and third*, in the LZG Derivative Action. *See* Declaration of Mark Basile, Esq. ("**Basile Decl.**"), ¶ 3. Upon his engagement, Mr. Serbagi began to vigorously advocate for his clients—in this Court, he made a letter request alleging Genius was in violation of the then-in effect injunction (*see* ECF 134), while in the Arbitration he, *inter alia,* appeared at conferences, prepared and filed LZG's Answer and

2

Counterclaims and requested the right to move for Threshold Ruling. *See* Basile Decl., ¶¶ 9-10. Mr. Serbagi sought to further assist LZG, Ritz and Moe when, on August 4, 2025, he sought—through the assistance of LZG, Moe and Ritz's Florida counsel, the Dhillon Law Group, Inc. ("**Dhillon Law**")—*pro hac* admission in the LZG Derivative Action.

Mr. Serbagi's engagement was complicated when, on July 25, 2025, Judge Walsh of the Florida Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County issued orders in the LZG Derivative Action, which found, in relevant part, that "Peter B. Ritz and Michael Moe are liable for breaching their fiduciary duties to LZGI" and, thus, "Michael Moe and Peter B. Ritz shall be immediately removed from the Board of Directors of LZG International, Inc." and "Peter B. Ritz shall be immediately removed from his position as Chief Executive Officer of the LZG International, Inc." *See* **Exhibits A** and **B** (together, the "**Judicial Removal Orders**") to the Basile Decl.[1] The response to the Judicial Removal Orders was widespread. On August 4, 2025, Dhillon Law moved to withdraw from its representation of LZG, stating that it "believes it can no longer represent LZG while also representing Defendants Moe and Ritz without creating a conflict of interest" and that "LZG should retain its own independent counsel." *See* Basile Decl. ¶ 7, **Exhibit C** to the Basile Decl., ¶ 3. Along with its withdrawal, the Dhillon Law also withdrew its *pro hac* motion for Mr. Serbagi.

Mr. Serbagi, initially, appeared to follow suit. On August 3, 2025, Mr. Serbagi filed a letter with Arbitrator MacGrath, stating that "upon further reflection" of the Judicial Removal Orders, Mr. Serbagi would need to withdraw from representing LZG. Also on August 3, Mr. Serbagi moved to withdraw as counsel for LZG in this action, stating that "[w]ithdrawal is necessitated

---

[1] It is Genius' understanding that the Judicial Removal Orders were not published and made publicly available until August 4, 2025.

because of the existence of an actual or perceived conflict of interest between the individual respondents and the Company LZGI." *See* ECF 137.

The Court, however, promptly noted that his withdrawal from representing LZG, but continued representation of Moe and Ritz, gave rise to a "separate professional and ethical obligations to both present and former clients," ECF 138, and, therefore, requested that Mr. Serbagi address how he could continue to represent Moe and Ritz on or before August 15, 2025. *Id.* It initially appeared that, after contemplating the issue further, Mr. Serbagi realized that he could not continue to represent Moe and Ritz when, on August 15, he filed a revised motion to withdraw from representation of LZG, Moe and Ritz. *See* ECF 139.

But just days later, on August 17, 2025, Mr. Serbagi made an about face and contacted Arbitrator MacGrath to inform her that "LZG has been reconstituted with a new CEO who has appointed me legal counsel for the Company." Basile Decl., ¶ 9.[2] On August 25, 2025, the Arbitrator entered Procedural Order No. 5, acknowledging Mr. Serbagi's letter to the Arbitration indicating that LZG was "in the process of engaging new counsel (as either co-counsel or replacement counsel)." *See* Basile Decl., ¶ 11.

Further noteworthy is that despite this Court drawing attention to Mr. Serbagi's professional and ethical obligations he owes to both current and former clients, he did not articulate how he could continue to represent LZG's best interests (without conflicting with the duties, obligations and loyalties he owes to Moe and Ritz).

---

[2] Genius takes this opportunity to note that while Moe and Ritz were both barred from seeking reappointment to LZG's management team, they—in their capacity as LZG shareholders, alongside other individuals who collectively constituted a majority—appointed LZG's new director, John New, on August 18, 2025. *See* Basile Decl., ¶ 8; **Exhibit D** to the Basile Decl.

4

## LEGAL STANDARDS

A.  **An Attorney's Duty of Loyalty**

An attorney owes the duty of loyalty to both current and former clients. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 17 (2d Cir. 1986); *Arifi v. De Transport Du Cocher. Inc.*, 290 F. Supp. 2d 344, 348 (E.D.N.Y. 2003). "The duty of loyalty is broader than the attorney-client privilege and an attorney is not free to attack a former client with respect to the subject matter of the earlier representation…" *New York v. Liuzzo*, 562 N.Y.S.2d 303, 304 (4th Dep't 1990); *United States v. Falzone*, 766 F. Supp. 1265, 1279 (W.D.N.Y. 1991) ("While the Court is not bound by this decision, it finds the *Liuzzo* decision persuasive because state and federal courts apply the same ethical standard, the Code of Professional Responsibility.").

B.  **Conflict of Interest with Current and Former Clients**

A conflict of interest—warranting preclusion and/or disqualification from the subsequent representation—arises when "an attorney's current representation is impaired by the loyalty he owes a former client," *New York v. McLaughlin*, 662 N.Y.S.2d 1019, 1022 (N.Y. Sup. Ct. 1997). Such a conflict particularly arises when a new or current client's matter concerns matters substantially related to those of the former client; in such cases, the attorney should be precluded from representing the new client. *See, e.g., Felix v. Balkin*, 49 F. Supp. 2d 260, 268 (S.D.N.Y. 1999) (holding that attorneys should be disqualified where the substantial relationship test is met "in order to assure that the confidentiality of the attorney-client relationship and the loyalty between attorney and client are preserved"); *Tekni-Plex, Inc. v Meyner and Landis*, 89 N.Y.2d 123, 130 (N.Y. 1996) (holding "in accordance with [the duties of loyalty and confidentiality], the Code [of Professional Responsibility] **precludes** attorneys from representing interests adverse to a former client on matters substantially related to the prior representation.") (emphasis added); *see*

5

*also* Canon 9 of the American Bar Association's (ABA) Model Code of Professional Responsibility ("A lawyer should avoid even the appearance of professional impropriety.").[3]

"Any doubts as to the existence of a conflict of interest must be resolved in favor of disqualification so as to avoid even the appearance of impropriety," *Gjoni v. Swan Club, Inc.*, 134 A.D.3d 896, 897 (2d Dep't 2015) (*citing Cohen v. Cohen*, 125 A.D.3d 589, 590 (2d Dep't 2015), "even when an actual conflict of interest may not exist," *id.* (citing *Albert Jacobs, LLP v. Parker*, 94 A.D.3d 919, 919 (2d Dep't 2012) (affirming disqualification when there was a mere "danger that confidences were disclosed"); *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975) ("[I]n the disqualification situation, any doubt is to be resolved in favor of disqualification") (citation omitted); *Saftler v. Government Employees Ins. Co.*, 95 A.D.2d 54, 62 (1st Dep't. 1983) ("Since a lawyer is obliged to avoid even the appearance of impropriety, any question should be decided in favor of disqualification."); *see also GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209-10 (2d Cir. 2010) ("One established ground for disqualification is concurrent representation, an attorney's simultaneous representation of one existing client in a matter adverse to another existing client. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 [2d Cir. 1976]. Because concurrent representation is '*prima facie* improper,' it is incumbent upon the attorney to 'show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.' *Id.* at 1387. **We have noted that this is 'a burden so heavy that it will**

---

[3] *See also 426 Realty Assoc., LLC v. Lynch*, 2019 N.Y. Misc. LEXIS 5304, at *9 (N.Y. Sup. Ct. Oct. 4, 2019) ("Thus, pursuant to section 1.7 of the Rules of Professional Conduct, an attorney may not act as an advocate in a matter where he or she has a conflict of interest with his or her current client."); Section 1.7 of the Rules of Professional Conduct ("Conflict of interest: current clients. (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgement on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.").

6

**rarely be met.'**  *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 [2d Cir. 1981].") (emphasis added).

C.    <u>**Substantial Relationship Between Prior Representation and Present Controversy**</u>

When evaluating whether an attorney must be disqualified, New York State and Federal Courts apply the "substantial relationship' test, under which an attorney must be disqualified where the present controversy is substantially related to the former representation.  *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) ("An attorney may be disqualified from representing a client in a particular case if: … (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and…"); *see also Solow v. W.R. Grace & Co.*, 83 N.Y.2d 303, 308-09 (N.Y. 1994); *Papyrus Tech. Corp. v N.Y. Stock Exch., Inc.*, 325 F. Supp 2d 270, 276-77 (S.D.N.Y. 2004); N.Y. Code Prof. Resp., Disciplinary Rule 5-108(A)(1).  Demonstrating a substantial relationship between the prior representation and the present controversy warrants disqualifying the conflict attorney (without requiring the movant to show actual prejudice) because compelling a party to reveal "the actual confidential matters previously entrusted to the attorney and their possible value to the present client would tear aside the protective cloak drawn about the lawyer-client relationship."  *T.C. Theatre Corp. v. Warner Bros Pictures, Inc.*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953); *accord Decora Inc. v. DW Wallcovering, Inc.*, 899 F. Supp. 132, 136 n.3 (S.D.N.Y. 1995) (discussing the substantial relationship test and stating that "[a]n attorney's access to privileged information is sufficient to warrant disqualification, because there is a presumption that access to privileged information will be accompanied by actual possession of such information") (citations omitted).

# ARGUMENT

I. **MR. SERBAGI'S UNAVOIDABLE CONFLICT OF INTEREST RISKS COMPROMISING THE INTEGRITY OF THE ARBITRATION AND FUTURE FINAL ARBITRATION AWARD**

A. <u>**The Court Possesses the Inherent Power to Preserve the Integrity of the Arbitration**</u>

Federal courts possess the inherent power to preserve the integrity of the adversary process. *See First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 55 (S.D.N.Y. 2017) (*quoting Hempstead Video. Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 [2d Cir. 2005]) ("The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process."); *see also New England Sec. Corp. v. Stone*, 941 N.Y.S.2d 539 (Kings Cnty. 2011) (granting a CPLR 7502(c) injunction to exclude counsel after finding, *inter alia*, violation of the Rules of Professional Conduct could "fundamentally compromise[] the integrity of the Arbitration and any relief which [a party] may obtain thereunder" and, thus, "disqualification [was] essential to protect the integrity of the Arbitration and avoid tainting that proceeding" because the his continued involvement posed an imminent and irreparable threat that would not be compensable by monetary damages).

Mr. Serbagi's continued representation of LZG risks compromising the integrity of the Arbitration and any relief that may be awarded thereunder.[4] Moreover, Mr. Serbagi's continued involvement could put the ethical obligations he owes to LZG at odds with those he owes to Ritz and Moe; indeed, if it revealed that—*like another court has already found*[5]—Ritz and Moe acted

---

[4] Genius, indeed, has specific concerns as to the ultimate resolution of the Arbitration and whether, for example, LZG would seek to challenge and set aside an unfavorable final award due to Mr. Serbagi's conflict. Given that Genius has no interest in dedicating and expending substantial time and resources to the Arbitration, it goes without saying that it would like to preclude any defects that could render the Arbitration void and force this entire dispute proceeding to "go back to start."

[5] *See* Judicial Removal Orders.

8

in an improper, fraudulent manner when negotiating, entering into and performing the Purchase Agreement [ECF 1-1], LZG (Mr. Serbagi's current client) will unavoidably need to make such arguments adverse to the interests of Ritz and Moe (Mr. Serbagi's former clients). This unavoidable conflict could compromise Mr. Serbagi's credibility during the Arbitration proceedings.

There is no disputing that Mr. Serbagi previously represented *both* LZG and Ritz and Moe, in this proceeding and the Arbitration and as it relates to the dispute arising from the Purchase Agreement. *See* ECF 134, 136. Likewise, there is no dispute that Mr. Serbagi had to withdraw from his representation of all three parties after identifying "an actual or perceived conflict of interest between LZGI" and Ritz and Moe, largely due to the decision rendered in the LZG Derivative Action by Judge Walsh, who found that Ritz and Moe engaged in malfeasance against LZG. *See* Judicial Removal Orders; ECF 137-1, ¶¶ 2-3; *see also* ECF 138. Given that acts taken by Mr. Serbagi's former clients (Ritz and Moe) have been found to be adverse to his new, current client (LZG), and such acts directly concern their management of LZG (including but not limited to its entry into the Purchase Agreement), it is highly likely that, should Genius prevail in the Arbitration, a final award could be challenged by LZG due to Mr. Serbagi's conflict of interest with his duty of loyalty to Ritz and Moe.[6] This Court should, therefore, disqualify Mr. Serbagi to ensure the integrity of the Arbitration (which is on the cusp of making material, merits-related decisions).

---

[6] For the reasons set forth herein, there are sufficiently serious questions as to whether Mr. Serbagi can fulfill the duties of loyalty that he owes to *both* LZG and his former clients, Ritz and Moe. To wit, there is a sufficiently serious question as to whether Mr. Serbagi could (and would) vigorously and effectively argue—should the facts support so—that Ritz and Moe acted in a deceitful, fraudulent manner when, *inter alia*, negotiating and performing the Purchase Agreement, particularly since Mr. Serbagi's renewed engagement was endorsed by Ritz and Moe, albeit in their capacity as LZG shareholders. *See* **Exhibit D** to Basile Decl.; Judicial Removal Orders.

9

B.   **Mr. Serbagi's Concurrent Conflicts of Interest Warrant Disqualification**

Mr. Serbagi cannot satisfy his ethical obligations to both LZG and Ritz and Moe. Mr. Serbagi's representation of LZG is not just substantially related to his prior representation of Ritz and Moe, **it concerns the exact same dispute.** Indeed, the representation concerns the Purchase Agreement by and between Genius and LZG, which includes Ritz and Moe's involvement—as agents of LZG—in the negotiation, due diligence, execution and performance of the Purchase Agreement. *See, e.g.,* ECF 1, *et seq.*; ECF 6; ECF 59; *see also* ECF 57; ECF 99. It, therefore, cannot be disputed that Mr. Serbagi acquired privileged information from Ritz and Moe about their conduct[7] when, *inter alia*, he familiarized himself with the substance of this action and the Arbitration, their respective procedural histories and prepared filings relevant to each. *See, e.g.,* Basile Decl., ¶¶ 5, 9-10; ECF 134 (alleging Genius had violated the Court's March 13, 2025 preliminary injunction); *see also T.C. Theatre Corp.*, 113 F. Supp. at 268 (when it is shown the subsequent relationship is substantially related to the prior, "[t]he Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.").[8] Since it is not only disputed, but also has been found, that

---

[7] Indeed, Ritz and Moe have been recognized as the **sole** directors and officers of LZG during all times relevant to the negotiations, due diligence, entry and performance of the Purchase Agreement. *See, e.g.,* Purchase Agreement (executed by Ritz, CEO of LZG); ECF 60 ("I am the Chief Executive Officer ('CEO') and co-founder of LZG International, Inc. ('LZG'). I have personal knowledge of the matters discussed in this declaration…"); **Exhibit C** at ¶ 6 (noting after the Judicial Removal Orders ejected Ritz and Moe from LZG that "LZG currently has no officers and no directors").

[8] Genius finds it particularly noteworthy that in the LZG Derivative Action, Dhillon Law, who appeared on July 25, 2025, as substitute counsel following King & Spalding LLP's June 16, 2025, withdrawal, **immediately** sought withdrawal from representing the three, aforementioned parties upon the issuance of the Judicial Removal Orders. *See* **Exhibit C** at ¶¶ 1-3 (noting that Dhillon Law was engaged on July 25, 2025, the same date of the Judicial Removal Orders, and upon review thereof "believe[d] that it can no longer represent LZG while also representing Defendants Moe and Ritz **without creating a conflict of interest**" and that "LZG should retain its **own independent counsel**") (emphasis added, citing Rules Regulating the Florida Bar).

Genius further notes that, prior to Dhillon Law's Motion to Withdraw, it had filed a motion for Mr. Serbagi's *pro hac* admission, which was withdrawn in connection with Dhillon Law's Motion to

Ritz and Moe's decisions and acts were not in best interests of LZG (but, rather, their own),[9] it is impossible that Mr. Serbagi could adhere to and uphold the duty of loyalty he owes to both LZG, on the one hand, and Moe and Ritz, on the other. Because there is a very real possibility that Mr. Serbagi's representation of LZG may force him to, *inter alia*, act upon privileged information he acquired during the course of his representation of Ritz and Moe. Because Mr. Serbagi cannot construct a "Chinese wall" in his mind to segregate this information in order to continue to comply with the duty of loyalty he owes to Ritz and Moe, his continued involvement in the Arbitration would open any final ruling to challenge by, for example, LZG *for their own attorney's conflict of interest*. This is to say, Mr. Serbagi's continued involvement give rise to grounds to challenge and potentially vacate the entire arbitration proceeding, forcing Genius and LZG to go back to "go back to start" and forego recovery of the considerable resources its expended to date (*e.g.*, hundreds of thousands in arbitration and legal costs, fees and expenses).

The improper influence that Mr. Serbagi's representation of Ritz and Moe, whose interests are averse to that of LZG, is precisely the reason that both the Second Circuit and New York courts consider disqualification essentially mandatory, and Mr. Serbagi's immediate disqualification is, therefore, the only appropriate response here. *Accord New England*, 941 N.Y.S.2d 539 (finding the attorney's "disqualification is essential to protect the integrity of the Arbitration and avoid tainting that proceeding because of the conflict of interest that [the attorney's] actions and participation in this matter have created."); *Narel Apparel Ltd., Inc v. Am. Utex Int'l*, 92 A.D.2d 913 (2d Dep't 1983) ("It is not essential that there be proof positive that confidential information

---

Withdraw. It is not unreasonable to state that Dhillon Law communicated its concerns about continued representation of LZG to Mr. Serbagi, who nonetheless has agreed to continue LZG in spite of the Dhillon Law and this Court's concerns. *See also* ECF 138.

[9] *See generally* Judicial Removal Orders.

**11**

will necessarily be disclosed in the course of the litigation" when finding in favor of disqualification of counsel); *GSI Com. Sols., Inc.*, 618 F.3d at 209-10 ("One established ground for disqualification is concurrent representation, an attorney's simultaneous representation of one existing client in a matter adverse to another existing client").[10] As such, Mr. Serbagi's concurrent conflicts of interest warrant disqualification.

### C. LZG Will Not Suffer Hardship or Prejudice As a Result of Mr. Serbagi's Disqualification

LZG will not face any prejudice or hardship in the Arbitration; to wit, on September 2, 2025, LZG engaged additional counsel—attorneys Tom Fini and Jordan Russell from the law firm of Catafago Fini LLP—to appear on its behalf alongside Mr. Serbagi. *See* Basile Decl., ¶ 14. Since additional counsel was engaged, they have actively participated in the proceedings, including Mr. Fini appearing at a September 18th status conference, where he, *inter alia*, demonstrated his familiarity with the procedural history of the Arbitration and advocated for LZG's rights to seek a Threshold Ruling. *See id.*; *New England*, 941 N.Y.S.2d 539 (granting a motion disqualifying counsel, finding the clients "will suffer no hardship at this early juncture in the Arbitration."). Moreover, there are no immediate deadlines that Mr. Serbagi's disqualification would disrupt. *See* Basile Decl., ¶ 12. The current, immediate deadlines set by the Tribunal consist of letter applications for leave to file dispositive motions, if any, by September 26, 2025, opposition letters by October 6, 2025 and replies by October 8, 2025. *Id.* However, if Mr. Serbagi

---

[10] *See also* ECF 137 ("Withdrawal is necessitated because of the existence of an actual or perceived conflict of interest between [Ritz and Moe] and the Company LZGI."); ECF 139 (same); *In re Morgan Guar. Trust Co.*, 151 Misc. 2d 863 (Suffolk Sur. Ct. 1991) ("Loyalty is the essential ingredient in the relationship of attorney and client. A lawyer who agrees to represent a client shall exercise his professional judgment solely for the benefit of his client divorced from any competing consideration. Furthermore, if at the time of retention it is apparent that there exists an **actual or potential** conflict of interest then the attorney is ethically obligated to decline to act for the client.") (emphasis added, citing New York Code of Professional Responsibility, DR 5-105(A), DR 5-101(A) and ABA Model Rule 1.7).

12

were to be disqualified, LZG's additional arbitration counsel can draft and file any letter application for leave to file dispositive motions that LZG may wish to file. As such, LZG will not suffer any hardship or prejudice as a result of Mr. Serbagi's disqualification.

Conversely, Genius faces substantial hardship because (again) it could be forced to participate in an arbitration that could ultimately be found compromised and, thus, the considerable resource it has already expended could be for naught and any judgment made therein declared null and void. Indeed, the ABA has recognized that Mr. Serbagi's ongoing, conflicting representations will "erode public confidence in the judicial system and the legal profession." *Liu v. Real Estate Inv. Group. Inc.*, 771 F. Supp 83, 87 (S.D.N.Y. 1991) (citing Canon 9); *In re Manshul Constr. Corp.*, 1998 U.S. Dist. LEXIS 10885, at *19 (S.D.N.Y. Jul. 13, 1998) (citing Canon 9 and finding disqualification to be proper when there is a possibility an attorney may "improperly use confidences gained in [their] representation of [a former client] to [the former client's] detriment.").

Accordingly, Mr. Serbagi's continued representation of LZG will only serve to prejudice and inflict hardship onto Genius—not LZG.

## **CONCLUSION**

For the foregoing reasons, Genius respectfully requests the Court grant Genius' motion and disqualify Mr. Serbagi from representing and/or assisting LZG in any matter relating to the Purchase Agreement, including but not limited to the Arbitration, and any such other and further relief as the Court deems just and proper.

13

Dated:   September 26, 2025
         Jericho, NY

                                                     */s/ Mark R. Basile*
                                                     Mark R. Basile, Esq.
                                                     THE BASILE LAW FIRM P.C.
                                                     390 N. Broadway, Ste. 140
                                                     Jericho, NY 11753
                                                     Tel.:     (516) 455-1500
                                                     Fax:      (631) 498-0748
                                                     Email:    mark@thebasilelawfirm.com

                                                     *Counsel for Petitioner*
                                                     *Genius Group Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of September 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                                                                             */s/ Mark R. Basile*