UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GENIUS GROUP LIMITED,

                     *Petitioner,*

          -against-

LZG INTERNATIONAL, INC., MICHAEL
THOMAS MOE and PETER RITZ,

                     *Respondents.*

VSTOCK TRANSFER, LLC,

                     *Nominal Respondent.*

Case No.: 1:24-cv-08464 (MKV)

---

## LZG INTERNATIONAL, INC.'S MEMORANDUM OF LAW <u>IN OPPOSITION TO MOTION TO DISQUALIFY</u>

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

RELEVANT PROCEDURAL HISTORY ...................................................................................3

ARGUMENT .................................................................................................................................9

I.      GENIUS MISSTATES AND MISAPPLIES THE LEGAL STANDARDS FOR
        DISQUALIFICATION BASED ON FORMER CLIENT CONFLICTS.........................11

II.     APPLYING THE CORRECT LEGAL STANDARDS, THE
        DISQUALIFICATION MOTION MUST BE DENIED ...................................................14

        A.      Genius Cannot Meet the First Element of a Disqualification Motion ..................14

        B.      All Interested Parties Have Waived Any Conflict of Interest...............................15

        C.      There Is No Disqualifying Conflict of Interest ....................................................17

        D.      There Is No Risk of Trial Taint............................................................................20

        E.      LGZ Will Be Severely Prejudiced By Disqualification........................................22

        F.      Genius Has Brought This Disqualification Motion For Tactical Reasons ............24

CONCLUSION..............................................................................................................................27

CERTIFICATION OF COMPLIANCE ........................................................................................28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allegaert v. Perot,*
    565 F.2d 246 (2d Cir. 1977)........................................................................17, 19, 27

*Anderson v. City of New York,*
    No. 16CIV2583ALCJCF, 2017 WL 4382163 (S.D.N.Y. Sept. 29, 2017) .............................26

*Bd. of Educ. v. Nyquist,*
    590 F.2d 1241 (2d Cir.1979).........................................................9, 10, 11, 13, 19, 20

*Bennett Silvershein Assocs. v. Furman,*
    776 F. Supp. 800 (S.D.N.Y. 1991) ...........................................................................12

*Bisnoff v. King,*
    154 F. Supp. 2d 630 (S.D.N.Y. 2001).........................................................................22

*Carey v. Moe,*
    Case No. 2024-019773-CA-01 ............................................................................3, 18

*Cinema 5, Ltd. v. Cinerama, Inc.,*
    528 F.2d 1384 (2d Cir. 1976)................................................................................25

*Evans v. Artek Sys. Corp.,*
    715 F.2d 788 (2d Cir. 1983)..........................................................................9, 13, 22

*Evans v. Artek Sys. Corp.,*
    715 F.2d at 793–94 .........................................................................................19

*Felix v. Balkin,*
    49 F. Supp. 2d 260 (S.D.N.Y. 1999)......................................................................19, 25

*Galante v. Mercedes Benz of Massapequa, LLC,*
    No. 218CV2426GRBST, 2022 WL 1019007 (E.D.N.Y. Jan. 20, 2022)...........................10, 22

*Gjoni v. Swan Club, Inc.,*
    134 A.D.3d 896 (2d Dep't 2015) ...........................................................................25

*GSI Com. Sols., Inc. v. BabyCenter, L.L.C.,*
    618 F.3d 204 Cir. 2010 ...................................................................................12, 25

*Gurniak v. Emilsen,*
    995 F. Supp. 2d 262 (S.D.N.Y. 2014)........................................................................18

*H&H Acquisition Corp. v. Fin. Intranet Holdings,*
    No. 98 CIV. 5269 (BSJ), 2000 WL 502869 (S.D.N.Y. Apr. 27, 2000).................................16

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,*
    409 F.3d 127 (2d Cir. 2005).......................................................................9, 10, 12, 13, 22

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,*
    No. CV94-3659(ETB), 2004 WL 62560 (E.D.N.Y. Jan. 12, 2004) .................................24, 26

*Int'l Elecs. Corp. v. Flanzer,*
    527 F.2d 1288 (2d Cir. 1975)..................................................................................12

*Jones v. Niagara Frontier Transp. Auth.,*
    722 F.2d 20 (2d Cir. 1983).....................................................................................17

*Leber Assocs., LLC v. Ent. Grp. Fund, Inc,*
    No. 00CIV.3759(LTS)(MHD), 2001 WL 1568780 (S.D.N.Y. Dec. 7, 2001)...................12, 14

*McCarthy v. Smith Barney Inc.,*
    58 F. Supp. 2d 288 (S.D.N.Y. 1999).........................................................................22

*Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC,*
    542 F. Supp. 2d 296 (S.D.N.Y. 2008).........................................................13, 18, 21, 24

*Mercado v. City of New York,*
    No. 08 CIV. 2855 BSJ HBP, 2010 WL 3910594 (S.D.N.Y. Sept. 30, 2010)...................10, 14

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2,*
    419 F. Supp. 3d 668 (S.D.N.Y. 2019).......................................................................18

*Muniz v. Re Spec Corp.,*
    230 F. Supp. 3d 147 (S.D.N.Y. 2017).....................................................................15, 25

*Network Apps, LLC v. AT&T Mobility LLC,*
    598 F. Supp. 3d 118 (S.D.N.Y. 2022).......................................................................14

*Purgess v. Sharrock,*
    33 F.3d 134 (2d Cir. 1994)....................................................................................11

*Raiola v. Union Bank of Switzerland, LLC,*
    230 F. Supp. 2d 355 (S.D.N.Y. 2002).....................................................................10, 14

*Republic of Kazakhstan v. Chapman,*
    585 F. Supp. 3d 597 (S.D.N.Y. 2022).........................................................................1

*Rojas v. Romanoff,*
    186 A.D.3d 103 (1st Dep't 2020)..............................................................................18

*Sentry at QB, LLC v. Wu*,
 219 A.D.3d 649 (2d Dep't 2023) ..........................................................................15

*Solow v. W.R. Grace & Co.*,
 83 N.Y.2d at 309–10 .............................................................................................22

*Talvy v. Am. Red Cross in Greater New York*,
 205 A.D.2d 143 (1st Dep't 1994), *aff'd*, 87 N.Y.2d 826 (1995) .........................10, 19

*Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*,
 No. 01CV1574(ILG)(RML), 2006 WL 2013471 (E.D.N.Y. July 18, 2006) ..........24

*In re Trib. Co. Fraudulent Conv. Litig.*,
 10 F.4th 147 (2d Cir. 2021) .................................................................................16

*Tylena M. v. Heartshare Hum. Servs.*,
 No. 02CIV.8401 (VM)(THK), 2004 WL 1252945 (S.D.N.Y. June 7, 2004) .........25

*W. T. Grant Co. v. Haines*,
 531 F.2d 671 (2d Cir. 1976) .................................................................................24

*Weaver v. Hatem*,
 No. 2020-08287, 2025 WL 2609390 (2d Dep't. Sept. 10, 2025) .........................15

**Statutes**

9 U.S.C. § 203 ...........................................................................................................1

**Other Authorities**

N.Y. Rules of Profrossional Conduct 1.9 ..................................................15, 17, 19

LZG International, Inc. ("LZG"), by and through its undersigned professional responsibility counsel, submits this memorandum of law in opposition to the motion (the "Motion") filed by Genius Group Limited ("Genius") to disqualify LZG's counsel Christopher Serbagi, Esq. (together "Serbagi") from representing and/or assisting LZG in any matter related to the dispute between Genius and LZG, most imminently in the pending ICC Arbitration proceeding entitled *Genius Group Ltd. Vs. LZG Int'l Inc, et al,* 29043/PDP (EPP) (the "Arbitration").

## PRELIMINARY STATEMENT

The gravamen of Genius's Motion is that Serbagi must be disqualified from representing LZG based on his prior representation of LZG's former Directors, Peter Ritz ("Ritz") and Thomas Moe ("Moe") (together, the "Former Directors").[1] This Motion is the latest in a series of litigation tactics by Genius aimed at gaining an unfair strategic advantage over LZG by filing litigations in multiple fora, all which stem from Genius's fraudulent conduct in connection with a planned 2024 transaction between Genius and LZG. As with Genius's prior applications to this Court, this latest Motion is not a good faith attempt to preserve the integrity of the judicial process. Rather, it is a transparent attempt by Genius to rid itself of a formidable adversary in the Arbitration, a highly expedited proceeding that is one month out from an evidentiary hearing.

Genius's Motion fails to meet the legal standards to warrant disqualification. As detailed below, Genius misrepresents and distorts those standards in its effort to persuade this Court to disqualify Serbagi. Applying the correct standards, however, disqualification must be denied.

---

[1] The breadth of Genius's Motion exceeds the jurisdiction of this Court, which is limited to addressing issues in aid of the Arbitration. *Republic of Kazakhstan v. Chapman*, 585 F. Supp. 3d 597, 605 (S.D.N.Y. 2022) (federal court jurisdiction pursuant to 9 U.S.C. § 203 is narrow and must be "tightly intertwined with the arbitration proceedings or awards"). Genius's Motion is not limited to the Arbitration or this lawsuit, but demands Mr. Serbagi's disqualification in all matters relating to the dispute between Genius and LZG. *See* Genius Memorandum of Law in Support of Motion to Disqualify ("Genius Mem." at 13, Dkt. 161). Genius's Motion should be limited to the Arbitration, the only proceeding where Mr. Serbagi currently represents LZG.

Most notably, Genius is a stranger to Serbagi's attorney-client relationships. Thus, Genius cannot meet even the first element of a disqualification motion: that the movant currently has or previously had an attorney-client relationship with the targeted lawyer. Equally significant is that LZG and the Former Directors have each provided informed, written consent to waive any conflicts of interest, so that Serbagi may continue representing LZG. Furthermore, there is no actual conflict of interest, because Serbagi never came into possession of any personal confidential information belonging to the Former Directors and had minimal substantive involvement in any proceedings on their behalf. Any communications that the Former Directors had with Serbagi occurred in the context of a joint representation involving LZG. Moreover, there is no risk of trial taint, because the Former Directors are no longer parties to the Arbitration and their interests in a positive outcome for LZG are fully aligned with LZG's interests. Finally, LZG would be severely prejudiced by being deprived of its chosen counsel, particularly considering the expedited nature of the Arbitration.

Genius's Motion is nothing more than a tactical maneuver aimed at gaining an unfair strategic advantage in the Arbitration. Granting the Motion would undermine rather than advance the integrity of the adversary process. Since Genius fails to meet a single element necessary to warrant disqualification, its Motion should be denied.

## RELEVANT PROCEDURAL HISTORY[2]

### Commencement of Multiple Proceedings

This Motion implicates the following three proceedings, all of which arise from a failed asset purchase between LZG and Genius:

**The Florida Action:**  On October 14, 2024, LZG shareholder and former COO Shawn Carey brought a derivative action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida—*Carey v. Moe*, Case No. 2024-019773-CA-01—against the Former Directors and LZG (the "Florida Action"). (Declaration of Christopher Serbagi, Esq. ("Serbagi Decl.") at ¶ 4).  On January 26, 2025, default was entered against the Former Directors and LZG in the Florida Action. (*Id.* ¶ 5).  On July 25, 2025, Moe and Ritz were removed as directors of LZG on default (the "Florida Default Order"). (*Id.* ¶ 6).  A motion to vacate these default orders is pending. (*Id.* ¶ 7).

**The Arbitration:**  On October 30, 2024, Genius commenced the Arbitration against LZG and the Former Directors. (*Id.* ¶ 8).  In April 2025, Genius dismissed the Former Directors, leaving LZG as the sole respondent. (*Id.*)  The Arbitration is proceeding on an expedited basis, with multiple upcoming deadlines and an evidentiary hearing scheduled to commence on November 12, 2025. (*Id.* ¶ 9).

**This Action:**  On November 7, 2024, Genius commenced this Action against the Former Directors and LZG (the "Action") seeking a preliminary injunction to preserve the *status quo* in aid of arbitration. (ECF No. 1-6).  After granting Genius's preliminary injunction on consent, the Court subsequently vacated that order due to certain post-injunction conduct by Genius and issued a "balanced preliminary injunction" against both sides, which the Court deemed necessary

---

[2] The factual recitation is limited to procedural background and does not include discussion of the substantive issues in the dispute between LZG and Genius, since these are not relevant to the Motion.

to maintain "the *status quo* pending the arbitration." (ECF No. 99 at 14).  An interlocutory

appeal followed and remains pending. (ECF No. 102).

**Serbagi's Brief Representation of the Former Directors as Joint Clients with LZG**

Between July and August 2025, Serbagi briefly represented the Former Directors as joint

clients along with LZG, pursuant to a July 16, 2025 retainer agreement. (Serbagi Decl. ¶ 11).[3]

The retainer agreement included a conflict waiver, which acknowledged that "all material

information may be shared among Clients" and that "[i]n the event of a conflict that cannot be

resolved, [Mr. Serbagi] may be required to withdraw from representing one or all Clients." (*Id.*)

Serbagi ceased representing the Former Directors by no later than August 18, 2025. (*Id.*)

**Representation in the Florida Action:**  After the default was entered in the Florida

Action, LZG and the Former Directors retained the Dhillon Law Group ("DLG") to appear as

local counsel, which they did on July 25, 2025.  (*Id.* ¶ 12).  Serbagi then moved to be admitted

*pro hac vice* on August 4, 2025.  (*Id.*)  That same day, however, DLG moved to withdraw as

counsel for LZG, based on its assessment that the Florida Default Order precluded the firm from

continuing to represent LZG. (*Id.*)  Serbagi's *pro hac vice* application was never approved and

Serbagi did not end up formally appearing for any parties in the Florida Action.  (*Id.*)  The

Former Directors are currently represented by R. Rene Carson in the Florida Action, with Foley

& Lardner acting as local counsel.  LZG is represented by Thomas Fini of Catafago Fini LLP in

the Florida Action, with Latham Luna, Eden & Beaudin, LLP acting as local counsel. (*Id.* ¶ 13).

**Representation in the Arbitration:** On July 21, 2025, Serbagi appeared in the

Arbitration on behalf of LZG only, the sole remaining respondent. (*Id.* ¶ 14).  Serbagi never

appeared in the Arbitration on behalf of the Former Directors—they had been dismissed as co-

---

[3] Prior to engaging Serbagi, LZG and the Former Directors had been represented by King & Spalding.

respondents in the Arbitration.  On August 3, 2025, Serbagi temporarily withdrew as counsel for LZG in the Arbitration in light of the Florida Default Order. (*Id.* ¶ 15; Ex. 1).  Because the Florida Default Order removed the Former Directors from their positions at LZG, the company temporarily lacked organizational leadership.  Accordingly, there was no one in place to make decisions about representation (including conflict waivers). (*Id.*)  After new leadership was installed, LZG then re-engaged Serbagi (as detailed below).  On August 17, 2025, Serbagi notified the Arbitrator that he was re-appearing in the Arbitration as LZG's counsel. (*Id.* ¶ 16, Ex. 2).  As Mr. Serbagi explained, the Florida Default Order removing the Former Directors left LZG without anyone to direct litigation, but "[t]hat and other issues have been resolved." (*Id.*)

**Representation in this Action:** On July 22, 2025, Serbagi appeared in this Action on behalf of LZG and the Former Directors. (ECF No. 136).  Given that this Action was stayed, Serbagi did not actively litigate in this Action.  On August 3, 2025, Serbagi moved to withdraw from representing LZG, in light of the Florida Default Order. (Serbagi Decl. ¶ 18).  Initially, the plan was for Serbagi to continue representing the Former Directors and for LZG to appoint counsel after appointing new leadership.  Serbagi explained that "[w]hile no substantive hearing was held in which Messrs. Ritz and Moe appeared to present their case," the Florida Default Order "presents an apparent conflict of interest between the individual Respondents and [LZG]." (ECF No. 137).

On August 7, 2025, the Court issued an Order to Show Cause asking Serbagi to explain "why his continued participation in the litigation and representation of only Respondents Moe and Ritz does not create an apparent or actual conflict of interest or interfere with counsel's separate professional and ethical obligations to both present and former clients." (ECF No. 138). At that time, LZG had not yet been reconstituted with new management and Serbagi was not

authorized to take any position regarding conflicts of interest.  As a consequence, Serbagi felt he had no option but to withdraw from representing all parties in the Action. (ECF No. 139).  On August 18, 2025, the Court granted Mr. Serbagi's motion to withdraw from representing all parties in the Action. (ECF No. 140).

The Former Directors are represented in this Action by R. Rene Carson, with Foley & Lardner acting as local counsel.  LZG is represented in this Action by Venable LLP – as well as by the undersigned counsel solely for the purpose of responding to this Motion.

## The Appointment of LZG's New Management

On August 14, 2025, the LZG shareholders appointed John New as the sole Independent Director. (Declaration of John New ("New Decl.") ¶ 2).  Mr. New then appointed William Vastardis to act as interim CEO for LZG. (*Id.* ¶ 3).  On August 18, 2025, Mr. Vastardis was appointed CEO of LZG and his previous actions with respect to the pending litigation were duly ratified. (Serbagi Decl. ¶ 23, Ex. 4).  Mr. Vastardis was later replaced as CEO by Marc Snyderman. (New Decl. ¶ 3).

## Serbagi's Re-Engagement as LZG's Counsel and the Conflict Waivers

After new leadership was appointed, LZG re-engaged Serbagi as LZG's counsel. (*Id.* ¶¶ 4-6).  As Mr. New explains, he believed Serbagi was best suited to handle the Arbitration, due to his familiarity with the facts and legal issues. (*Id.* ¶ 5).  Mr. New also recognized that Serbagi's prior representation of the Former Directors raised conflicts of interest issues. (*Id.* ¶ 7).  After consideration, LZG decided to waive any such conflicts. (*Id.* ¶ 8).  Likewise, both Former Directors (who are LZG shareholders) determined it was in their best interests, as well as LZG's interests, for Serbagi to continue representing LZG and, therefore, waived any conflicts of interest. (Declaration of Ritz ("Ritz Decl.") ¶¶ 9-11); Declaration of Moe ("Moe Decl.") at ¶¶ 8-10).

Accordingly, LZG, and the Former Directors entered into an Agreement to Terminate Joint Representation and Waive Conflicts, dated as of August 17, 2025 (the "Conflict Waiver," attached as Ex. 5 to the Serbagi Decl.).  The Conflict Waiver confirmed the termination of Serbagi's representation of Moe and Ritz, confirmed that Serbagi would continue to represent LZG in the Arbitration and any related matters, and memorialized the agreement of all parties to waive any and all conflicts of interest. (*Id.*)  With respect to shared confidences, the Conflict Waiver confirms that the prior representation of LZG and the Former Directors was a joint representation, in which "all information and communications between or among the Firm, the Company and the Former Directors were shared communications, regardless of whether the information was shared during individual or joint communications" and as such, "in the event of any subsequent dispute between or among joint clients, any information shared in the course of the joint representation is not privileged between or among such joint clients." (Conflict Waiver § 2).  This is consistent with the parties' prior agreement regarding shared confidences and conflict waivers, as reflected in their retainer agreement.  (Serbagi Decl. ¶ 11).

The Former Directors represented "that they have not shared any information with [Serbagi] outside the context of the joint representation, that they never shared any personal confidential information with [Serbagi], and that they discussed only Company matters with [Serbagi]." (Conflict Waiver ¶ 4; *see also* Moe Decl. ¶ 5; Ritz Decl. ¶ 12).  The Former Directors also agreed "that they will not seek to vacate, reverse or otherwise challenge any finding, judgment, award or other determination of any court or tribunal on the basis of the prior joint representation, any conflict of interest, or any claim of confidentiality or privilege." (Conflict Waiver § 4; *see also* Moe Decl. ¶ 11; Ritz Decl. ¶ 11).  Likewise, Mr. New has confirmed that LZG will not seek to vacate or challenge any outcome of the Arbitration or the Action on the

basis that Serbagi had a conflict of interest. (New Decl. ¶ 9).

**Genius' Tactical Gamesmanship Has Caused Unnecessary Delay and Confusion**

As noted, the Arbitration is proceeding on an expedited basis.  There are numerous deadlines over the next several weeks, including pre-hearing exchanges of evidence, a pre-hearing case management conference, and an evidentiary hearing scheduled to commence on November 12, 2025. (Serbagi Decl. ¶¶ 27-29; Exs. 6 & 7).  Despite these deadlines, Genius's counsel, Mark Basile submitted a Declaration under penalty of perjury on September 26, 2025, stating: "As of the date hereof, the Disclosure (discovery) process has not yet begun in the Arbitration.  Indeed, as of the date hereof, *there are currently no deadlines or timetable for, inter alia¸ Disclosure, Witness Statements, Pre-Hearing Written Submissions, Evidentiary Hearings and/or Post-Hearing Closing Written Submissions*." (ECF No. 162 at ¶ 12) (emphasis added).

Mr. Basile's statements are impossible to reconcile with the facts.  Indeed, on August 25, 2025, more than one month before Mr. Basile filed his Declaration, the Arbitrator issued Procedural Order No. 5 ("PO 5"), which contains a table setting multiple pre- and post-hearing deadlines, including: (1) Witness Statements (September 30); (2) Pre-Hearing Written Submissions (October 30); (3) the Evidentiary Hearing (November 13); and Post-Hearing Closing Submissions (November 20). (Serbagi Decl. Ex. 7). Genius's counsel was well aware of these deadlines when he submitted his Declaration.  In fact, on the same date that Mr. Basile submitted his Declaration to this Court, his office also submitted a letter to the tribunal objecting to LZG's request for a two-week extension of the September 30 Witness Statement deadline. (Serbagi Decl. ¶ 28; *see also* Declaration of Tom Fini ("Fini Decl.") ¶ 6).

Genius initially sought disqualification by Order to Show Cause on August 25, 2025. (Dkt. No. 144-47).  On September 3, 2025, the Court denied the OSC due to multiple procedural deficiencies and set a September 24, 2025 deadline to file a renewed motion.  Despite the

expedited nature of the Arbitration and Genius's claims of imminent prejudice, Genius inexplicably waited until that very last day before refiling essentially the same motion papers on September 24, 2025. (Dkt. No. 155-58). The Court denied Genius's request a second time for failure to comply with the Court's prior order and gave Genius a further extension until October 10 to re-file. Even then, Genius's re-filed OSC failed to comply with proper procedures, but was permitted to proceed by regular motion.

Due to Genius's numerous procedural missteps and delays, more than a month has passed since Genius's original filing. Meanwhile, the Arbitration has proceeded apace.

## ARGUMENT

In exercising their inherent power to "preserve the integrity of the adversary process", federal courts considering a motion to disqualify counsel must "balance 'a client's right to freely choose his counsel against 'the need to maintain the highest standards of the profession." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citing *Bd. of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979) and *Gov't of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir.1978)). The client's right to freely choose his counsel provides a "particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791–92 (2d Cir. 1983) (internal citations omitted). For this reason, disqualification motions are generally only granted in cases where either (1) an attorneys' conflict of interests "undermines the court's confidence in the vigor of the attorney's representation of his client," or (2) "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation . . . giving his present client an unfair advantage." *Nyquist,* 590 F.2d 1241 at 1246.

9

Courts in the Second Circuit "often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules." *Hempstead Video*, 409 F.3d at 132. However, they are not bound by these rules, and disqualification does not necessarily follow even if the Court finds a rule has been violated. *See id* (citing *Nyquist*, 590 F.2d at 1246). Rather, under the "restrained approach" of this Circuit, disqualification is warranted only "when the facts concerning the lawyer's conduct poses a significant risk of trial taint." *Raiola v. Union Bank of Switzerland, LLC*, 230 F. Supp. 2d 355, 362 (S.D.N.Y. 2002) (internal citations omitted). Whether the Court's focus is on the enforcement of ethical obligations, or on avoiding tainted proceedings, "there are no hard and fast rules for striking the balance between enforcement of ethical rules and the preservation of client rights." *Mercado v. City of New York*, No. 08 CIV. 2855 BSJ HBP, 2010 WL 3910594, at *3 (S.D.N.Y. Sept. 30, 2010). Rather, "the conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent." *Nyquist,* 590 F.2d at 1246 (internal citations omitted).

New York state and federal courts alike are careful not to lose sight of the fact that disqualification motions "are often used as a litigation tactic, 'inflicting hardship on the current client and delay upon the courts by forcing disqualification even though the client's attorney is ignorant of any confidences of the prior client.'" *Talvy v. Am. Red Cross in Greater New York*, 205 A.D.2d 143, 149 (1st Dep't 1994), *aff'd*, 87 N.Y.2d 826 (1995) (citing *Solow v. W.R. Grace & Co.*, 83 N.Y.2d 303, 310 (1994)); *see also Galante v. Mercedes Benz of Massapequa, LLC*, No. 218CV2426GRBST, 2022 WL 1019007, at *3 (E.D.N.Y. Jan. 20, 2022) (citing *Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008)) (When disqualification motions "come from opposing counsel . . . . they are subject to "particularly strict scrutiny" because of the "potential for abuse as a tactical device.").

Genius's motion is just such a tactical motion, and not its first.  The motion to disqualify is yet another attempt to use this Court's intervention to create a lopsided playing field in the arbitration to its own advantage and to disadvantage LZG. *See supra* at 3-4.  For the reasons below, the Court should deny the motion.

## I.  GENIUS MISSTATES AND MISAPPLIES THE LEGAL STANDARDS FOR DISQUALIFICATION BASED ON FORMER CLIENT CONFLICTS

Genius's Motion misstates the standard for a motion to disqualify counsel based on a former client conflict.  Rather, Genius strings together incomplete citations from disparate and archaic[4] New York state and federal authorities, including inapposite cases addressing concurrent conflicts.  Genius also misleadingly asserts that these authorities *require* disqualification any time an alleged conflict or even an appearance a conflict of interest arises (*see* Genius Mem. at 5-6).  That is not the law in this Circuit or in New York.  Contrary to Genius's assertions, this Court is never *required* to order disqualification, even if there were a technical violation of the conflicts rules (which does not exist here). *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court.")  The Court always retains discretion to consider multiple factors and to deny disqualification, particularly where there is no risk of trial taint. *Nyquist*, 590 F.2d at 1247 (when trial would not be tainted, "appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases").  Thus, Genius's assertion that this Court "must" grant disqualification under any circumstances—let alone under the facts here—is grossly misleading.

---

[4] Genius's Motion improperly relies on the Disciplinary Rules of the former New York Code of Professional Responsibility (*See* Genius Mem. at 5, 7, 12).  The Disciplinary Rules were replaced in 2009 by the New York Rules of Professional Conduct (the "RPCs").  Nowhere in its Motion does Genius refer to the New York RPCs, which actually govern conflicts of interest in New York matters.

Genius's Motion also relies heavily on the rejected "appearance of impropriety" concept. The "appearance of impropriety" standard was eliminated from the New York RPCs.  It has been found to be "devoid of substance" because "it would be downright perverse to hold that what has been held not to exist nonetheless 'appears.'" *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 806 (S.D.N.Y. 1991) (noting the "'question-begging'" nature of the term "'appearance of impropriety'" has resulted in the "elimination of any such proscription" in the Model Rules). *See also Int'l Elecs. Corp. v. Flanzer*, 527 F.2d 1288, 1295 (2d Cir. 1975) (the former Canon prohibiting the appearance of impropriety "should not be used promiscuously as a convenient tool for disqualification"); *Leber Assocs., LLC v. Ent. Grp. Fund, Inc*, No. 00CIV.3759(LTS)(MHD), 2001 WL 1568780, at *7 (S.D.N.Y. Dec. 7, 2001) ("[i]f plaintiff intends to suggest that disqualification is independently justified by the Canon, we reject that contention.")

Puzzlingly, Genius repeatedly refers to "Mr. Serbagi's concurrent conflicts of interest" (Genius Mem. at 1, 10 (heading I.B)), while also conceding that this is—at most—a former client conflict issue (*id.* at 9).  As discussed, Serbagi has withdrawn from representing Moe and Ritz in every action or proceeding arising from the dispute with Genius.  Serbagi currently only represents LZG.  The analysis for concurrent client interests is therefore inapplicable. *Hempstead Video*, 409 F.3d at 133 ("The standard for disqualification varies depending on whether the representation is concurrent or successive.") *See also GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 2019-10 2d Cir. 2010) (cited by Genius, defining concurrent representation as "an attorney's **simultaneous** representation of one existing client in a matter adverse to another existing client") (emphasis added)).

The correct standard disqualification based on former client conflicts requires

demonstrating "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; **and** (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Hempstead Video*, 409 F.3d at 133 (citing *Evans v. Artek Sys. Corp.,* 715 F.2d at 791) (emphasis added). Genius misleadingly cites *Evans v. Artek* for this standard, but only lists the second prong of this three-pronged test, completely ignoring the first prong (i.e. that the moving party must be a former client who is now adverse to the attorney) and the third prong (that the attorney likely had access to the former client's relevant privileged information). With respect to that third prong, Genisus Motion fails to address the fact that LZG and the Former Directors were joint clients of Serbagi, without any expectation of confidentiality between or among them.

In addition, Genius fails to mention that courts should consider other relevant factors in assessing a disqualification, beyond the technical requirements of the ethics rules. One of the most important factors, completely ignored by Genius, is whether the alleged conflict of interest would "taint" the legal proceedings. *Hempstead Video*, 409 F.3d at 133. Trial taint may exist when either (a) a lawyer has access to material confidential information as a result of the representation that could be used against the moving party or (b) the lawyer's duties to the former client will diminish the strength of the lawyer's advocacy on behalf of the current client. *Nyquist*, 590 F.2d at 1246. Since neither of these "trial taint" concerns are present here, it is telling that Genius simply omitted any reference to this element.

Another critical factor is whether the nonmoving party will suffer prejudice if it were to lose its chosen counsel at a particular juncture in the proceeding. *See, e.g., Med. Diagnostic*

*Imaging, PLLC v. CareCore Nat., LLC*, 542 F. Supp. 2d 296, 316 (S.D.N.Y. 2008) (even if movants would benefit from the disqualification, that benefit was outweighed by the "substantial prejudice" to the client because their counsel "has built up significant knowledge" and "[n]ew counsel would face a daunting task" in getting up to speed). Considerations such as delay in the proceedings and the tactical advantage to the moving party are also relevant. "Among other concerns that courts have identified, (i) disqualification impinges on a party's right to employ the counsel of its choice; (ii) a motion to disqualify has potential to be used for tactical purposes; and (iii) even when brought in good faith, such a motion can cause delay, impose expenses, and interfere with the attorney-client relationship." *Network Apps, LLC v. AT&T Mobility LLC*, 598 F. Supp. 3d 118, 127 (S.D.N.Y. 2022) (internal citations omitted). Moreover, any privileged information the attorney might have would not be particularly "relevant" if the former client is not a party to the litigation. *See, e.g., Leber Assocs., LLC*, 2001 WL 1568780, at *7 (considering former client's status as a non-party as a separate reason for rejecting the disqualification motion).

Finally, and perhaps most relevant here, Genius's Motion ignores that clients and former clients are generally free to waive conflicts of interest. Where clients have been "adequately informed of the conflict and its potential ramifications," they may "waive the right to assert their conflicting defenses and pursue a unified defense," thus minimizing the risk of trial taint. *Mercado v. City of New York*, 2010 WL 3910594, at *8.

## II.    APPLYING THE CORRECT LEGAL STANDARDS, THE DISQUALIFICATION MOTION MUST BE DENIED

### A.    Genius Cannot Meet the First Element of a Disqualification Motion

Genius is not and has never been a client of Serbagi. Accordingly, Genius fails to satisfy the first prong of a disqualification motion. *See Raiola v. Union Bank of Switzerland, LLC*, 230

F. Supp. 2d at 361 (plaintiff may not move for disqualification because only a former client or one in privity may move for disqualification) (citing *United States v. Rogers*, 9 F.3d 1025, 1030 (2d Cir. 1993)). *See also Sentry at QB, LLC v. Wu*, 219 A.D.3d 649, 650 (2d Dep't 2023) (since the nonmovants were neither current nor former clients of the firm, "they lacked standing to seek disqualification based upon a conflict of interest"); *Weaver v. Hatem*, No. 2020-08287, 2025 WL 2609390, at *2 (2d Dep't. Sept. 10, 2025) (same).

Genius asserts a conflict of interest against Serbagi based on a default judgment that found Moe and Ritz breached their fiduciary duties to LZG. If there is a conflict of interest (which is disputed, as discussed below) that alleged conflict does not belong to Genius. Nor does it involve or in any way impact Genius. Genius is a complete stranger to the attorney-client relationships between Serbagi and the Former Directors or LZG. As the adverse party, Genius has no basis to stand in the shoes of the Former Directors and assert any conflict against their former lawyer, against their express wishes and interests. By doing so, Genius reveals that its only purpose is to seek a tactical advantage. *See Muniz v. Re Spec Corp.,* 230 F. Supp. 3d 147, 154 (S.D.N.Y. 2017) (the fact that the conflict "would not adversely affect the moving defendants may shed light on whether the motion is a 'tactical device,' designed primarily to disrupt plaintiffs' case rather than to preserve the integrity of the adversary process" (citing *Scantek Med.,* 693 F.Supp.2d at 238)).

### B.    All Interested Parties Have Waived Any Conflict of Interest

Former clients are always free to waive any conflicts of interest. RPC 1.9 provides that "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client *unless the former client gives informed consent, confirmed in writing."* NY RPC 1.9(a) (emphasis added). There are no conditions or limitations

on the right of a former client to waive a conflict of interest.

Here, the Former Directors have been apprised of the potential conflicts and advised to seek independent counsel. (Conflict Waiver ¶ 3; Moe Decl. ¶ 9; Ritz Decl. ¶ 11). They each gave their informed consent, confirmed in writing, to Mr. Serbagi's continuing representation of LZG and termination of his representation of Moe and Ritz in the related matters stemming from the APA and the dispute with Genius. (Conflict Waiver ¶ 4; Moe Decl. ¶ 9; Ritz Decl. ¶ 11). Likewise, LZG has also agreed to waive any conflicts of interest arising from Serbagi's prior representation of the Former Directors. (Conflict Waiver ¶ 5; New Decl. ¶ 8; Declaration of John Parker ("Parker Decl.") ¶ 4). These waivers fully defeat any disqualification motion based upon the purported conflict between LZG and the Former Directors. *See H&H Acquisition Corp. v. Fin. Intranet Holdings*, No. 98 CIV. 5269 (BSJ), 2000 WL 502869, at *2 (S.D.N.Y. Apr. 27, 2000) (declining to disqualify party's "chosen counsel" in light of conflict waiver).

In support of its Motion, Genius points to a brief period where Serbagi temporarily withdrew and then reappeared in the Arbitration on behalf of LZG. Genius implies that these actions demonstrate that Serbagi was conflicted. However, these events precede the Conflict Waiver entered into by LZG and the Former Directors. LZG ultimately chose to engage Serbagi as its counsel and elected to waive any conflicts of interest. Similarly, the Former Directors determined that it was in their best interests for LZG to be represented by Serbagi and to waive any conflicts of interests.

Genius's argument also fails to recognize that, after the Former Directors were removed from their positions, there was no one to waive conflicts until new leadership was installed. Under those circumstances, Serbagi reasonably concluded that he had no authority to act on behalf of LZG or the Former Directors in any of the legal proceedings. *See In re Trib. Co.*

*Fraudulent Conv. Litig.,* 10 F.4th 147, 160 (2d Cir. 2021) ("A corporation can only act through its directors and officers"); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*").  At the time, Mr. Serbagi believed he had no other option but to temporarily withdraw from representing LZG. (Serbagi Decl. ¶ 15).  Once new leadership was installed, LZG could act through its agents to direct the various proceedings and waive any conflicts with its former directors, which it did promptly so that it could engage its chosen counsel.  Accordingly, Mr. Serbagi's re-appearance in the Arbitration was neither an "about face" (as Genius claims), nor inconsistent with Serbagi's previous positions.  By temporarily withdrawing from the Arbitration, and then reappearing after LZG had been reconstituted and the relevant parties had waived all conflicts, Serbagi took the most prudent and appropriate course of action.

### C.    There Is No Disqualifying Conflict of Interest

Putting aside that all conflicts have been waived, there are no disqualifying conflicts of interest in the first place.  To establish a conflict of interest under RPC 1.9, Genius must demonstrate that the successive representations are not only "substantially related" to each other, but that Serbagi's representation of LZG in the Arbitration is "materially adverse" to his former representation of Ritz and Moe. RPC 1.9(a).  Yet, Genius completely glosses over the "materially adverse" prong of the disqualification analysis, focusing exclusively on the "substantial relationship" element.[5] (*See* Genius Mem. at 10).  Here, LZG's interests are not materially adverse to those of Moe and Ritz.  They are not adverse parties—Moe and Ritz have been dismissed from the Arbitration. (Serbagi Decl. ¶ 8).  This significantly reduces or

---

[5] No one disputes that Serbagi's brief representation of the Former Directors would be substantially related to the issues in the Arbitration and this Action.  However, it is well established under New York law that the substantial relationship prong is never reached in the context of a joint representation.  *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977) (holding substantial relationship test is "inapposite" among jointly represented clients).

eliminates the material adversity issue.  At most, Moe and Ritz may be called as witnesses in the

Arbitration, in which event they will be represented by independent counsel.  This is sufficient to

protect their interests. *Med. Diagnostic Imaging,* 542 F. Supp. 2d at 315–16 ("[t]he risk that an

attorney may cross-examine a former client is not sufficient to disqualify an attorney"); *Gurniak*

*v. Emilsen*, 995 F. Supp. 2d 262, 270 (S.D.N.Y. 2014) (denying motion to disqualify where the

'former client' requirement of a motion to disqualify could not be satisfied where the non-party

former client could be a witness).

Genius's argument that the Florida Default Judgment creates a disqualifying conflict of

interest in the Arbitration is meritless.  *First*, the motion to vacate the default in the Florida

Circuit Court is still pending, and Moe and Ritz have denied all wrongdoing in their proposed

responsive pleading. (Serbagi Decl. ¶ 7).  *Second*, even if the default judgment is not vacated

(which it should be), having been denied the opportunity to meaningfully contest the merits of

the *Carey* complaint, this does not preclude LZG or its counsel from disputing in the Arbitration

that they committed any wrongdoing in the course of the proposed Genius purchase, since under

New York law, "[c]ollateral estoppel is generally not available where the judgment in the prior

action was obtained on default." *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F.

Supp. 3d 668, 691 (S.D.N.Y. 2019); *accord. Rojas v. Romanoff*, 186 A.D.3d 103, 109 (1st Dep't

2020) ("An issue is not actually litigated" for collateral estoppel purposes "if [] there has been a

default").  Thus, LZG is free to take a position in the Arbitration that is consistent with the

Former Directors' interests.  *Third*, even in the unlikely event that Arbitrator decides the Florida

Default Order has collateral estoppel effect in the Arbitration, then the purported wrongdoing by

Moe and Ritz would simply become an undisputed fact in that proceeding, which Serbagi would

have no discretion to challenge.  Put differently, any counsel for LZG would be in precisely the

same position as Serbagi with respect to the Florida Default Order, regardless of whether they previously represented the Former Directors. *See Talvy*, 205 A.D.2d at 151 ("[t]he dilemma, if indeed it be one . . . would be present no matter who represents it and whether it has the same or different counsel in the two cases.")  Thus, there is no material adversity in the interests between Serbagi's former clients and LZG that would "undermine[] the court's confidence in the vigor of the attorney's representation of his client." *Nyquist*, 590 F.2d at 1246.

Furthermore, Serbagi is not "in a position to use privileged information" belonging to Moe and Ritz by virtue of his prior representation, giving LZG an "unfair advantage." *Id.* Serbagi represented the Former Directors for less than a month as part of a joint representation with LZG.  For privileged information to be disqualifying, it must be of a kind that one would not expect it to be shared among jointly represented parties with common interests in litigation. *See Felix v. Balkin*, 49 F. Supp. 2d 260, 270 (S.D.N.Y. 1999) ("Information imparted for the mutual benefit of the joint clients is not privileged against either of them"); *Allegaert v. Perot*, 565 F.2d at 251 (denying disqualification motion where attorneys were never "positioned to receive information intended to be withheld" from their primary clients); *Evans v. Artek Sys. Corp.*, 715 F.2d at 793–94 (whether an attorney was in possession of a confidential information for the purpose of Rule 1.9 disqualification depended on whether he received it confidentially through the adverse party's corporate officer seeking counsel on its behalf or through the officer as a dissident adverse to the corporation).  Since Serbagi represented LZG and the Former Directors as joint clients at all times, there was never any expectation that the information shared with Serbagi would be disqualifying as to the other joint clients.

Additionally, the Former Directors have unequivocally represented that they shared no confidential information with Serbagi that could potentially create a disqualifying conflict with

LZG.  Furthermore, out of an abundance of caution, they have waived any duty of confidentiality arising from their former attorney-client relationship with Serbagi. (Conflict Waiver ¶ 4).

### D.    There Is No Risk of Trial Taint

Even if there were an unwaived conflict of interest under the RPCs (which there is not), federal courts are also required to consider whether that unwaived conflict would taint the legal proceedings. *Nyquist*, 590 F.2d at 1246.  Genius's Motion completely ignores this essential element of a disqualification motion.  Trial taint may be found *only* in one of two circumstances and *only* where the conflict has not been waived by the affected clients.  First, trial taint may exist if an attorney's unwaived  conflict of interest "'undermines the court's confidence in the vigor of the attorney's representation of his client.'" *Nyquist,* 590 F.2d at 1246.  Put differently, is there a concern that the lawyer's sense of obligation towards his former client will cause him to "pull his punches" on behalf of his current client?  Second, trial taint may exist where the attorney is "in a position to use privileged information" against the former client, thereby "giving his present client an unfair advantage." *Id.*  Neither of these concerns are present here.

First, putting aside the fact that the Former Directors have waived any such concerns by agreeing to the Conflict Waiver, there is no risk that Serbagi's brief former representation of Moe and Ritz (with minimal litigation activity by him) will in any way impede his vigorous representation of LZG.  As noted, Moe and Ritz are no longer parties in the Arbitration and are not adverse to LZG in any proceedings.  In addition, Moe and Ritz have stated under oath that they want Serbagi to represent LZG to the best of his ability, because they reasonably believe that LZG's success in the Arbitration **is in their best interests**. (*See* Moe Decl. ¶ 8; Ritz Decl. ¶ 9).  Thus, there would be no incentive for Serbagi to mount anything but full throated advocacy on behalf of LZG in the Arbitration—and for Genius to speculate into Serbagi's motivations is inappropriate. (*See* Genius Mot. at 4).  It is precisely because Serbagi has and will continue to

vigorously advocate for LZG that Genius seeks Serbagi's disqualification.

Second, there is no possibility that Serbagi could use privileged information against the Former Directors to LZG's unfair advantage. As discussed, all privileged information received in a joint representation belongs equally to all of the clients. *See* supra at 19. Additionally, the Former Directors have attested that they never provided Serbagi with any personal confidential information during their brief representation. (*See* Moe Decl. ¶ 5; Ritz Decl. ¶ 12). *See Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F. Supp. 2d at 316 (denying motion where the "Court sees no reason to disregard the assertions by Weiss that he does not recall receiving, and his notes do not reflect, that he obtained any significant information about CareCore or its affect on Movants' practices"). In any event, as set forth in the Conflict Waiver and in the Former Directors' Declarations, they have fully and knowingly consented to the use of any information shared with Serbagi. (Conflict Waiver ¶ 4; Moe Decl. ¶ 5; Ritz Decl. ¶ 12).

Genius's claim that the arbitration proceeding "could ultimately be found to be compromised" (Genius Mem. at 1) is the sole argument advocating any conceivable interest of Genius, and it is insufficient establish trial taint or any other basis for disqualification. Genius's baseless speculation that LZG, Moe or Ritz *might* try to attack an arbitral award based on a supposed conflict of interest is directly contradicted by the representations in the Conflict Waiver, as well as the sworn statements of the Former Directors and LZG's Director and GC. (Conflict Waiver ¶ 4; Moe Decl. ¶ 10; Ritz Decl. ¶ 11; New ¶ 9; Parker Decl. ¶ 6). All of the interested parties have made clear that they will not seek to challenge any result based on an alleged conflict of interest. With no possibility that LZG will challenge any arbitral award based on a conflict of interest, there is no possibility of prejudice to Genius or trial taint.

Furthermore, such speculation is insufficient disqualify LZG's chosen counsel. *See*

*Galante*, 2022 WL 1019007, at *7 ("[t]he mere possibility of a legally cognizable claim between or among a group of jointly represented clients does not require disqualification of their counsel"). Genius fails to explain how such a claim could meet the high threshold for vacating an arbitral award. *See Bisnoff v. King*, 154 F. Supp. 2d 630, 636–37 (S.D.N.Y. 2001) (confirming arbitral award where petitioner failed to meet the "high" showing required to avoid summary confirmation that the award was procured by arbitrator misconduct); *McCarthy v. Smith Barney Inc.*, 58 F. Supp. 2d 288, 294 (S.D.N.Y. 1999) (denying vacatur, because, among other reasons, "ineffective assistance of counsel is not among the specified grounds for vacating an award" under the FAA).

### E. LGZ Will Be Severely Prejudiced By Disqualification

Disqualifying Serbagi would not only prejudice LZG, but also render it almost impossible for LZG to successfully prosecute the Arbitration, especially at this late date. Indeed, this is why Genius brought its Motion: it wishes to deprive LZG of its chosen counsel at a critical juncture in the expedited Arbitration proceedings, less than three weeks before final pre-hearing briefing is due. The public policy interest in a client's right to freely choose its counsel is so strong that courts will not lightly override it, requiring a "high standard of proof on the part of one who seeks to disqualify." *Evans v. Artek Sys. Corp.*, 715 F.2d at 791; *Hempstead Video*, 409 F.3d at 132; *Solow v. W.R. Grace & Co.*, 83 N.Y.2d at 309–10 ("A per se disqualification rule also conflicts with public policies favoring client choice and restricts an attorney's ability to practice"). As shown above, Genius has not met this high threshold. In fact, Genius's Motion fails to meet a single prong of the disqualification standards.

Granting the Motion would cause extreme prejudice in this case, where the Arbitration is on an expedited schedule. While claiming to be deeply concerned about an imagined conflict of interest, Genius has made one procedural misstep after another in attempting to seek Serbagi's

disqualification. Each mistake by Genius and its counsel has caused further delays in the process of seeking disqualification, while the Arbitration has continued to move forward expeditiously. Indeed, when LZG's counsel recently sought a brief extension in the Arbitration due to Genius's delays in seeking disqualification, LZG opposed the requested extension. (*See* Serbagi Decl. ¶ 28; Fini Decl. ¶ 6). Due to Genius's inexcusable errors and delays, this Motion will not even be fully briefed until October 20, 2025, less than *one month* before the evidentiary hearing in the arbitration, and a mere *ten days* before the parties' pre-hearing submissions are due. (Serbagi Decl. ¶ 29, Ex. 8). That does not include the time for this Court to rule on the Motion.

Perhaps most telling is that after Genius filed its first procedurally defective motion on August 25, 2025, it took the three weeks the Court offered[6] to re-file a motion it had already drafted. Genius knew that critical deadlines in the Arbitration were quickly approaching and that the longer it waited the more difficult it would become to replace Serbagi. The delay not only suggests tactical gamesmanship but significantly increases the prejudice LZG would suffer.

Genius contends that LZG will suffer no prejudice as a result of losing its chosen counsel in the Arbitration. (Genius Mem. at 12-13). In support of this claim, Genius's counsel blatantly misrepresents the status of the Arbitration proceedings, claiming that there are no imminent deadlines (ECF No. 162 ¶ 12). *See supra* at 8-9. Mr. Basile cannot claim that he was unaware of the deadlines set forth in PO 5, since he specifically references PO 5 in his September 26, 2025 Declaration. (ECF No. 162 ¶ 11). All this shows the lengths that Genius and its counsel will go to rid them of a formidable adversary in the Arbitration.

Genius further argues that LZG will not be prejudiced by Serbagi's disqualification,

---

[6] The Court was not informed of the deadlines in the Arbitration when it scheduled the deadline, but Genius was. There was no reasonable basis for Genius to take the whole time to re-file the papers.

because co-counsel has appeared in the Arbitration. (Genius Mem. at 12).  This is incorrect.  Co-counsel does not have the depth of knowledge of the facts, the history and procedural posture of this multi-front dispute, the relevant evidence, legal arguments and strategies, that would be necessary to try the case alone. (Fini Decl. ¶ 7).  There is also insufficient time for co-counsel to get up to speed with a depth of knowledge necessary to competently represent LZG if they were forced to replace rather than support Serbagi. (*Id.* ¶ 5). *See Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, No. 01CV1574(ILG)(RML), 2006 WL 2013471, at *8 (E.D.N.Y. July 18, 2006) (denying motion even where co-counsel could continue the representation, since exclusion of the client's chosen attorney would create a hardship).  Forcing a party to replace its lead counsel less than a month before trial would undermine rather than serve the integrity of the adversary process. *See Hempstead Video*, 2004 WL 62560, at *8 ("while sensitive to the integrity of the bar, the public is also rightly concerned about the fairness and efficiency of the judicial process").  Therefore, "any appearance of impropriety ... must be balanced against the fairness of depriving [defendants] of [their] choice of counsel and the extent to which [the] motion to disqualify is motivated by litigation strategy) (internal citations omitted). *Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F. Supp. 2d at 315 ("The Court's concern, therefore is with taint which results in one side gaining an unfair advantage over the other").

Thus, the severe prejudice that LZG would suffer, weighed against a lack of trial taint, is sufficient reason to deny Genius's motion to disqualify. *See W. T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976) (Court could not "lightly separate Grant from the counsel of its choice" where "[d]isqualification of present counsel and the substitution of a new attorney unfamiliar with the facts and the law will inevitably result in further harmful delay and expense").

### F.    Genius Has Brought This Disqualification Motion For Tactical Reasons

Genius's Motion is a transparent litigation tactic aimed at gaining a strategic advantage

over LZG in the Arbitration.  As noted, Genius has never been Serbagi's client.  Genius is and has always been adverse to Serbagi in all legal matters.  Yet, the cases cited by Genius involve motions by either **a former or current *client* of the targeted lawyer**. *See, e.g., GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d at 214 (motion brought by corporate affiliate sufficiently close to constitute a concurrent client conflict); *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976) (motion brought by existing client where the attorney is on both sides of the same dispute); *Gjoni v. Swan Club, Inc.*, 134 A.D.3d 896, 896 (2d Dep't 2015) (motion brought by client of conflicted attorney's former firm to disqualify him from representing a party adverse to the former firm client); *Felix v. Balkin*, 49 F. Supp. 2d at 264 (motion brought by former client of the disqualified firm's partner).  These cases involve clients or former clients who have legitimate concerns about their own lawyers' misuse of confidential information or breach of loyalty.  Those concerns are nonexistent here.

Genius has no legitimate interest in disqualifying Serbagi.  On the contrary, Genius knows that disqualifying Serbagi would severely handicap LZG in the Arbitration.  If this Motion were granted, LZG would lose its lead counsel less a month before the evidentiary hearing in the Arbitration. *See Tylena M. v. Heartshare Hum. Servs.*, No. 02CIV.8401 (VM)(THK), 2004 WL 1252945, at *3 (S.D.N.Y. June 7, 2004) (denying motion where plaintiffs would suffer severe prejudice). This motion is even more tactical for the lack of any former attorney-client relationship. *See Muniz v. Re Spec Corp.,* 230 F. Supp. 3d at 154.

Genius's repeated delay in bringing the Motion further demonstrates its tactical underpinnings.  Genius first attempted to seek Serbagi's disqualification by filing an procedurally flawed *ex parte* application for emergency relief more than a month ago.  Genius then delayed approximately three weeks before filing its second, nearly identical application.

(*See* ECF Nos. 155-158). Genius's lax attention to the appropriate procedures for bringing such an application before the Court belies any sincerity in seeking the relief Genius claims is required. As a result of Genius's errors, more than a month has transpired since it first sought Serbagi's disqualification. *See Anderson v. City of New York*, No. 16CIV2583ALCJCF, 2017 WL 4382163, at *4 (S.D.N.Y. Sept. 29, 2017) (if a motion to disqualify is not made within a reasonable time after discovering a possible conflict of interest, it is presumed waived, since "[a]ttorneys are expected to bring what they genuinely believe are serious issues of disqualification arising during litigation to the tribunal's attention promptly for adjudication.") (internal citations omitted). Were this Motion anything other than a cynical litigation tactic, Genius would not have repeatedly failed to ensure its motions complied with the applicable rules.

Finally, the tactical nature of this disqualification motion is evident from the way Genius has touted Serbagi's procedural withdrawals in the stayed Action on investor calls and in press releases, where Genius has misleadingly and inappropriately couched its own arguments on this motion as factual statements to the public at large. Moreover, to employ Serbagi's name in these types of public documents was gratuitous and reflects the retaliatory nature of this motion. (Serbagi Decl., ¶ 31, Ex. 8).

Genius brought this Motion with the clear purpose of gaining an unfair tactical advantage in the Arbitration, rather than to redress or forestall any actual harm it could possibly suffer. *See, e.g., Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, No. CV94-3659(ETB), 2004 WL 62560, at *9 (E.D.N.Y. Jan. 12, 2004) (finding that the timing of the motion gave the court "reason to believe that the motion to disqualify . . . is motivated at least in part by litigation strategy.") Such an evident tactical purpose, in the absence of any real conflict, trial taint, or

harm to Genius, is reason enough to deny its motion. *See also Allegaert v. Perot*, 565 F.2d at 251 (noting the Court's concern "that disqualification motions have become "common tools of the litigation process, being used . . . for purely strategic purposes where nearly eight months elapsed in the attempt to attain disqualification").

## **CONCLUSION**

For the reasons stated herein, LZG respectfully requests that the Court deny Genius's motion to disqualify, and award LZG such other and further relief as may be just and proper.

DATED: New York, NY
      October 13, 2025                     FRANKFURT KURNIT KLEIN + SELZ PC

By: *Nicole Hyland*

    Nicole I. Hyland
    Kristen Niven
    nhyland@fkks.com
    kniven@fkks.com

    28 Liberty Street
    New York, New York 10005
    (212) 980-0120

    *Professional Responsibility Counsel for*
       *Respondent LZG International, Inc.*

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York:

The foregoing Memorandum of Law of respondent LZG International, Inc. in opposition to the Motion for Disqualification of Petitioner Genius Group Limited was prepared on a computer using the Microsoft Word program.

Relying on that program's word-count function, the number of words in the foregoing document, excluding caption, any index, table of contents, table of authorities, signature blocks, and this certificate is 8,731.

Dated:   New York, New York
         October 13, 2025

_____
        Nicole I. Hyland