UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENIUS GROUP LIMITED,<br><br>      *Petitioner*,<br><br>  -against-<br><br>LZG INTERNATIONAL, INC., MICHAEL THOMAS MOE and PETER RITZ,<br><br>      *Respondents,*<br><br>VSTOCK TRANSFER, LLC,<br><br>      *Nominal Respondent.* | 1:24-cv-8464-MKV |

**PETITIONER GENIUS GROUP LIMITED'S REPLY MEMORANDUM OF LAW IN
<u>SUPPORT OF ITS MOTION FOR DISQUALIFICATION</u>**

Petitioner Genius Group Limited ("**Genius**") respectfully submits this reply memorandum of law in support of its Motion to Disqualify attorney Christopher Serbagi from representing and/or assisting Respondent LZG International, Inc. ("**LZG**") in any matter related to the dispute between Genius and LZG and arising from a certain Purchase Agreement, including but not limited to the ICC Arbitration proceeding entitled *Genius Group Ltd. vs. LZG Int'l, Inc, et al*, 29043/PDP (EPP) (the "**Arbitration**").

Protecting the confidentiality and integrity of the Arbitration, and a final award arising therefrom, is of the utmost importance. *See New England Sec. Corp. v. Stone*, 941 N.Y.S.2d 539 (Kings Cnty. 2011) (granting a CPLR 7502(c) injunction to exclude opposing arbitration counsel after finding, inter alia, violation of the Rules of Professional Conduct could "fundamentally compromise[] the integrity of the Arbitration and any relief which [a party] may obtain thereunder," rendering any final arbitration award "ineffectual" and, thus, "disqualification [was] essential to protect the integrity of the Arbitration and avoid tainting that proceeding" because the his continued involvement posed an imminent and irreparable threat that would not be compensable by monetary damages); *see also First NBC Bank v. Murex, LLC,* 259 F. Supp. 3d 38, 55 (S.D.N.Y. 2017) (*quoting Hempstead Video. Inc. v. Incorporated Village of Valley Stream,* 409 F.3d 127, 132 [2d Cir. 2005]) ("The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process."). In its opening memorandum, Genius notes its specific concerns as to the integrity of the ultimate resolution of the Arbitration, as well as the very real risk that Mr. Serbagi's participation will lead to the Arbitration's confidentiality becoming compromised as a result of Mr. Serbagi's connection to Respondents Peter Ritz ("Ritz") and Michael Thomas Moe ("Moe"), leaving a final award open to being challenged and/or vacated. *See* ECF 161 at 8-11; 8, fn 4. For the reasons set forth in Genius'

1

opening memorandum and herein, Genius respectfully requests that the Court find that Mr. Serbagi's disqualification from representing LZG in the Arbitration is necessary and warranted to maintain the integrity and confidentiality of the Arbitration.

## ARGUMENT

I. **THE RESPONDENTS' CONFLICT WAIVER IS IRRELEVANT TO THE HARM GENIUS WILL SUFFER AS THE RESULT OF A TAINTED ARBITRATION**

   A. The Florida Default Judgment Found Fraudulent Conduct by Ritz and Moe, Actions Materially Adverse Toward LZG's Interests, and Removed Ritz and Moe from Their Positions at LZG

Based on a finding of a "multi-year fraudulent scheme" consisting of the "misappropriat[ion] of millions of dollars of LZGI funds" perpetrated by Ritz and Moe, on July 25, 2025, Judge Walsh of the Florida Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County issued orders in the LZG Derivative Action,[1] which found, in relevant part, that, if true, "Peter B. Ritz and Michael Moe are liable for breaching their fiduciary duties to LZGI" and, thus, "Michael Moe and Peter B. Ritz shall be immediately removed from the Board of Directors of LZG International, Inc." and "Peter B. Ritz shall be immediately removed from his position as Chief Executive Officer of the LZG International, Inc." *See* ECF 162-1 at 1, 4. If the Florida court's finding that Ritz and Moe perpetuated a multi-year fraudulent scheme upon LZG is true, it demonstrates Ritz and Moe's clear, materially adverse interest against LZG.

In its Opposition, LZG contends that "Genius' argument that the Florida Default Judgment creates a disqualifying interest in the Arbitration is meritless" because "any counsel for LZG would be in precisely the same position as Serbagi with respect to the Florida Default Order." *See* Opp. at 18-19. Genius contends that the Court should instead find to the contrary. This is a completely

---

[1] *Shawn Carey et. al. v. Michael Moe et. al.*, Case No. 2024-019773-CA-01 (Fla. 11th DCA)

false statement because Thomas M. Fini, co-counsel for LZG in the Arbitration, never represented Moe and/or Ritz personally in any of these matters.

First, LZG asserts that "the motion to vacate the Florida Default Judgment is still pending," and that Ritz and Moe "have denied all wrongdoing" in their proposed responsive pleading." *Id.* at 18. Whether a motion to vacate the Default Judgment is pending is irrelevant as the Default Judgment, and the findings contained therein, has been entered by the Florida court since July 25, 2025, has not been vacated and remains in full effect despite the filing of a motion to vacate. Nevertheless, Ritz and Moe's denial of "all wrongdoing" will have to be raised before the Florida state court; and such denials are irrelevant here.

Second, LZG argues that because Ritz and Moe had "been denied the opportunity to meaningfully contest the merits of the Carey complaint, this does not preclude LZG or its counsel from disputing in the Arbitration that they committed any wrongdoing in the course of the proposed Genius purchase." *Id.* Aside from the fact that Ritz and Moe are no longer parties to the Arbitration, should a dispute relating to Ritz and Moe's wrongdoing arise in the Arbitration, their participation will be limited as witnesses represented by separate counsel, and any defense that LZG may have as to Genius' claims, may be brought through engaged co-counsel, Mr. Fini. Third, LZG argues that "even if Arbitrator decides the Florida Default Order has collateral estoppel effect in the Arbitration, then the purported wrongdoing by Moe and Ritz would simply become an undisputed fact in that proceeding, which Serbagi would have no discretion to challenge." *Id.* This argument completely misses the target as Genius' claims in the Arbitration are not based on the findings in the Florida Derivative Action, nor are any of Genius' claims against Ritz and Moe in the arbitration. Further, none of these arguments dispute the fact that Ritz and Moe have a judgment against them and, according to the judgment's language, if the allegations contained in

3

the Florida Derivative Action complaint are true, Ritz and Moe were found to have perpetuated fraudulent conduct that is materially adverse to the interests of LZG, Mr. Serbagi had represented them before this Court and attempted to represent them in the Florida court. At this point in time, Ritz and Moe's interests are adverse to LZG and Genius' interest in the confidential underlying Arbitration proceeding must be protected by this Court by preventing the sharing of any confidential information relating to the Arbitration with Ritz and Moe.

B. <u>The Respondents' Conflict Waiver is Between the Respondents and Does Not Prevent Any Harm Genius Would Suffer as a Result of a Breach of the Arbitration's Confidentiality</u>

The execution of the Respondents' conflict waiver is an agreement between the Respondents and is irrelevant to the ultimate issue this motion attempts to resolve: that Genius would suffer harm as a result of a breach of the confidentiality of the Arbitration which Ritz and Moe are no longer parties to. Based on his pre-existing relationship with Ritz and Moe, there is, or there reasonably appears to be a high risk that Mr. Serbagi's representation of LZG will be influenced by Ritz and Moe to deflect or conceal information that may be adverse to Ritz and Moe, or that confidential information relating to the Arbitration will be shared with Ritz and Moe their benefit, whether such benefit is to assist in their defense of Genius' related Southern District of Florida RICO action, or otherwise. *Accord New England*, 941 N.Y.S.2d 539 (finding the attorney's "disqualification is essential to protect the integrity of the Arbitration and avoid tainting that proceeding because of the conflict of interest that [the attorney's] actions and participation in this matter have created."); *Narel Apparel Ltd., Inc v. Am. Utex Int'l,* 92 A.D.2d 913 (2d Dep't 1983) ("It is not essential that there will necessarily be proof positive that confidential information will necessarily be disclosed in the course of the litigation" when finding in favor of disqualification of counsel."). Additionally, a breach of the confidentiality of the Arbitration opens a pathway for a final arbitration award to be challenged and vacated not only by Genius or LZG,

4

but also the plaintiffs in the Florida Derivative Action should they ultimately take control over LZG. A successful challenge to the integrity of a final award in the Arbitration will force Genius and LZG to restart the Arbitration, forgoing a significant amount of time and resources (*e.g.*, hundreds of thousands of dollars in arbitration and legal costs, fees and expenses). As such, disqualification is appropriate as it is essential that LZG's Arbitration counsel be independent from Ritz and Moe to protect the integrity and confidentiality of the Arbitration.

## II.   IT IS PROPER FOR GENIUS TO MOVE FOR MR. SERBAGI'S DISQUALIFICATION

### A. As an Opposing Party, Genius Maintains Standing to Move for Disqualification

Courts in the New York District Court for the Southern District for New York ("Southern District") have held that a party who is not part of the alleged conflict has standing to make a disqualification motion. *See e.g. Planning & Control, Inc. v. MTS Group, Inc.*, 1992 U.S. Dist. LEXIS 3004, at *2 (S.D.N.Y. Mar. 11, 1992) (holding that a party, although not a former client, has standing to move to disqualify an attorney based on an alleged violation); *Altschul v. Paine Webber*, 488 F. Supp. 858, 850 n.1 (S.D.N.Y. 1980) ("Competence to raise disqualification is not limited to former or aggrieved clients. Ethical misconduct is a matter of public concern implicating the integrity of the bar ...."; *Skidmore v. Warburg Dillon Read L.L.C.*, 2011 U.S. Dist. LEXIS 6101, at *9 (S.D.N.Y. May 10, 2001) (rejecting the proposition that standing is limited merely to an attorney's former clients).

Here, LZG falsely states that Genius fails to meet the first element of a disqualification motion because Genius has never been a client of Mr. Serbagi, and therefore lacks standing to bring a motion to disqualify. This argument is a distraction from the fact that Mr. Serbagi, by his continuous representation of LZG in the arbitration, provides a clear connection between both Ritz and Moe on the one hand, and LZG on the other hand. In other words, Mr. Serbagi would appear

5

to be a conduit to feed confidential information relating to the Arbitration to Ritz and Moe, who are no longer parties in the Arbitration and were kicked out of their company by a Florida court, and who can use such confidential information to try to escape further potential liability. As a result, Mr. Serbagi's representation causes a clear conflict, or at minimum, the appearance of a conflict as it relates to the Arbitration. Moreover, LZG fails to indicate that standing for disqualification motions is a grey-area of law in the Second Circuit, and that in fact, many cases in the Southern District of New York have permitted a party that is not a formal or former client, to move for disqualification of an attorney. *See, e.g., Planning, Altschul*, and *Skidmore*.

B. <u>This Court Recognized the "Existence of an Actual or Perceived Conflict of Interest" Between Serbagi's Representation of LZG and Ritz and Moe</u>

In addition to appearing on behalf of the Respondents in the Arbitration, there is no dispute that Mr. Serbagi was retained by Moe and Ritz to appear *pro hac vice* in the Florida Derivative Action, an action by LZG shareholders brought against the Respondents based on Ritz and Moe's fraudulent conduct and abuse of their positions at LZG. *See* Declaration of Christopher Serbagi, ECF 171 ("Serbagi Decl."), ¶ 12; ECF 162-1 at 2. Mr. Serbagi filed a motion for admission *pro hac vice* to represent LZG, Ritz and Moe in the LZG Derivative Action. *See* Declaration of Peter Ritz, ECF 173 ("Ritz Decl."), ¶ 7; Declaration of Michael Thomas Moe, ECF 174 ("Moe Decl."), ¶ 5. While representing, or preparing to represent the Respondents in the Arbitration and Florida Derivative Action, it is very likely that Mr. Serbagi obtained privileged information from Ritz and Moe relating to their actions during the time the parties were negotiating the Asset Purchase Agreement in order to prepare a defense to Genius' claims against LZG in the Arbitration and the LZG Shareholders' claims against the Respondents in the Florida Derivative Action. Mr. Serbagi would have obtained the privileged information relating to the Florida Derivative Action fraud based allegations while representing the Respondents simultaneously. It will be impossible for

6

Mr. Serbagi to dutifully represent LZG's interests in the Arbitration as it is more likely than not that Mr. Serbagi will be required to utilize the privileged information against his former clients to support LZG's defense, leaving a final Arbitration award open to challenge by not only Genius or the Respondents, but also the *Carey* plaintiffs should they ultimately win the Florida Derivative Action against LZG and take control of the company away from New, Ritz and Moe.

In light of the Florida Default Judgment, on August 3, 2025, Mr. Serbagi moved to withdraw from his representation of LZG in this special proceeding due to "the existence of an actual or perceived conflict of interest between the individual respondents and the Company LZGI." *See* ECF 137. Thereafter, on August 7, 2025, the Court issued an Order to Show Cause identifying noted that his withdrawal from representing LZG, but continued representation of Moe and Ritz, gave rise to a "separate professional and ethical obligations to both present and former clients," ECF 138, and, therefore, requested that Mr. Serbagi address how he could continue to represent Moe and Ritz on or before August 15, 2025. *Id*. Quickly thereafter, Mr. Serbagi realized that he could not continue to represent Moe and Ritz and, on August 15, he filed a revised motion to withdraw from representation of LZG, Moe and Ritz. ECF 139. Despite this Court drawing attention to Mr. Serbagi's professional and ethical obligations he owes to both current and former clients, he did not articulate how he could continue to represent LZG's best interests without conflicting with the duties, obligations and loyalties he owes to Moe and Ritz after their removal as directors of LZG, nor does LZG's Opposition demonstrate how Mr. Serbagi will be able to continue his representation of LZG without the confidentiality of the Arbitration becoming compromised.

C. <u>LZG will not Suffer Prejudice from Losing its "Chosen Counsel"</u>

LZG will not suffer prejudice from the loss of Serbagi as its "chosen counsel." While Mr. Serbagi has acted as the *de facto* representative of LZG in the Arbitration, on September 2, 2025,

7

LZG retained Thomas M. Fini of Catafago Fini LLP as co-counsel to represent the company in the Arbitration. *See* Declaration of Thomas M. Fini, ECF 176, ¶ 3. In his Declaration, Mr. Fini asserts that he was only "recently retained" and "still coming up to speed on all aspects of the Arbitration," despite being retained and involved with representing LZG in the Arbitration for over a month and a half. *See id.*, ¶ 7. It is highly unlikely that Mr. Fini has been unable to properly familiarize himself with the issues surrounding the Arbitration in the significant amount of time that he has been retained.

D.  Genius Did Not Delay in Re-Filing This Motion Out of "Tactical Gamesmanship"

In its Opposition, LZG suggests that Genius' delay in bringing this motion constitutes "tactical gamesmanship." Opp. at 23. However, what LZG views as a "transparent litigation tactic aimed at gaining a strategic advantage over LZG" is, simply, Genius' compliance with filing deadlines set forth in an Order by this Court. Opp. at 23, 24-25. In its Opposition, LZG failed to acknowledge indisputable facts regarding its representation, or lack thereof, in this special proceeding.

Between June 11 and July 21, 2025, LZG was unrepresented by counsel until Mr. Serbagi appeared on behalf of the Respondents on July 22, 2025. *See* ECFs 132, 136. Following Mr. Serbagi's appearance on July 22, 2025, and subsequent withdrawal on August 18, 2025 (ECF 140), LZG was *again* unrepresented and remained so until the Court ordered counsel to appear on behalf of LZG on or before September 17, 2025. *See* ECF 149. On September 17, 2025, the last day before LZG would "once again be deemed in default," and one week prior to Genius' deadline to re-file this motion, substitute counsel appeared on behalf of LZG. *See* ECFs 149, 151-152. Again, during *two of the three weeks* that the Court gave Genius to re-file this motion, LZG remained unrepresented until the very last day before it would be deemed in default. Genius felt it would

8

have been highly inappropriate to re-file this motion prior to substitute counsel appearing and remaining on behalf of LZG.

E. <u>The Incorrect, Unmodified Statement Contained in the Revised Basile Declaration is, at Worst, an Innocuous Error</u>

The addition of paragraph 12 unmodified in the revised Basile Declaration that declared there were "no deadlines or timetable…" was an innocuous error. The statement was merely leftover from the original August 25, 2025 filing when the statement was accurate. The inclusion of an unmodified timetable in the revised motion papers was unintentional.

## **CONCLUSION**

For the reasons set forth herein, to protect the confidentiality and integrity of the Arbitration and a final award arising therefrom, Genius respectfully requests that the Court grant its Motion for Disqualification, along with any such other relief the Court deems just and proper.

Dated: October 20, 2025
      Jericho, New York

*/s/ Mark R. Basile*
Mark R. Basile, Esq.
THE BASILE LAW FIRM P.C.
390 N. Broadway, Ste. 140
Jericho, NY 11753
Tel.:   (516) 455-1500
Fax:   (631) 498-0748
Email: mark@thebasilelawfirm.com

*Counsel for Petitioner*
*Genius Group Limited*

9

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the foregoing Reply Memorandum of Law in Support of Petitioner Genius Group Limited's Motion for Disqualification was prepared using a computer and Microsoft Word.  Pursuant to Microsoft Word's word count function, the number of words in the foregoing memorandum of law, excluding the caption, any index, table of contents, table of authorities, signature blocks and this certificate of compliance is 2,871.

Dated: October 20, 2025
       Jericho, New York

                                              */s/ Mark R. Basile*
                                              Mark R. Basile, Esq.
                                              THE BASILE LAW FIRM P.C.
                                              390 N. Broadway, Ste. 140
                                              Jericho, NY 11753
                                              Tel.:   (516) 455-1500
                                              Fax:    (631) 498-0748
                                              Email: mark@thebasilelawfirm.com

                                              *Counsel for Petitioner*
                                              *Genius Group Limited*